## JACOB ALLBRIGHT V. THE GOVERNOR OF TEXAS.

The various statutes on the subject of the assessment and collection of taxes have each contained a provision that the assessor and collector should use the forms and pursue the instructions of the comptroller of public accounts.

In a suit by the State on the official bond of the assessor and collector, to render liable him and his sureties, for a default in collecting taxes of a certain class, letters of instruction from the comptroller to him giving instructions to desist from the sale of property for the purpose of collecting said taxes until he should receive further instructions from the comptroller's office, such evidence is admissible and relevant, under an issue setting up said instructions as a defence.

Such a defence, it seems, is good.

Under the provisions of the law of 1848, the sureties on the official bond of the assessor and collector were liable only for the acts of their principal during one year, and not during his whole official term.

The mere statement of an account by the comptroller of public accounts will not supply the want of proper testimony to support a suit based upon it.

The 5th section of the act of February 11th, 1850, entitled an " act to provide for settling the fiscal affairs of the late Republic of Texas," applies to suits against the defaulting officers of the Republic, but not to those against the officers of the State of Texas.

Neither does the 89th section of the District Court act of 1846 apply to a mere statement of an account on the books of the comptroller's office. That section extends only to certified copies of records of public officers and courts ; and would embrace the official bonds, the assessment rolls, receipts, vouchers and whatever documents are properly records of the comptroller's office.

APPEAL from Houston. Tried below before the Hon. R. A. Reeves.

This suit was brought in the name of "The Governor of the State of Texas," for the use and benefit of the State, against Jacob Allbright, assessor and collector of taxes, and George Click and William Allbright, sureties on his official bond, executed on the 31st day of August, 1848, alleging that said Jacob was on the day and year last aforesaid elected and qualified as assessor and collector of taxes for Houston county.

The plaintiff filed as a part of his petition an account current, with the following caption:

"Dr.　Comptroller of Public Accounts, in account current with Jacob Allbright, assessor and collector Houston county, for 1846 and 1847." The balance shown thereby to be due from the assessor and collector being the amount sued for, to wit, one thousand and seventy-nine dollars. Attached to the account appeared the following certificate:

- "State of Texas, Comptroller's Office.

"I certify the within to be a correct copy of the record of the account of Jacob Allbright, late assessor and collector of Houston county, showing a balance due the State for 1846 and 1847, of one thousand and seventy-nine dollars, as taken from the books and archives of this office.

"Given under my hand and seal of office at Austin,
[L. S.]　　　this 19th day of February, A. D. 1855.

"JAMES B. SHAW,
"Comptroller."

This account contained merely items or entries in the books, but no copies of vouchers, returns, receipts or other evidences of indebtedness. The account charged the assessor with the amounts which were collectable in virtue of assessments, and the petition alleged that he had failed to collect and pay over the same.

The defendant, Allbright, answered by a general demurrer, a general denial, and for a special answer alleged that the non-resident assessment for the years 1846 and 1847 had never been collected by him; that after his qualification as said officer he was proceeding to collect said taxes by a sale of the property of non-resident delinquent tax payers lying in his county, when he received from the comptroller of public accounts instructions dated the 19th of October, 1848, commanding him to suspend the sale of said property until otherwise informed by him; which instructions were renewed by the comptroller on the 27th day of July, 1850, and during said defendant's term of office were never countermanded.

On the trial the plaintiff offered in evidence the account on

which the action was based, to the introduction of which the defendants objected.

Because the account furnished no evidence that the money sued for was collected by the defendant Allbright as assessor and collector.

Because it fails to show that the money was collected within the year for which the sureties in the bond were bound.

Because the said account current is not evidence, either that the uncollected balance upon the assessment rolls for 1846 and 1847 went into the hands of the said Allbright, or that he failed to collect the same during the time for which said sureties were bound.

And because said account current is no evidence of the receipt by Allbright to Kennedy as therein stated. To render which objection intelligible the items referred to are here transcribed and are as follows:

"By amount of receipt to S. E. Kennedy for uncollected
balance for 1846 .............................$135 99
For record do ................................. 487 04
"By amount of receipt to S. E. Kennedy for uncollected balance for 1847 ........................ 543 71
On rendered assessments record do................. 489 63

Which objections were overruled, and the account allowed to be read as evidence, to which the defendants excepted.

On the trial the court instructed the jury that the account current shows the amount the plaintiff is entitled to recover, subject to any credits that may be allowed the defendants. That the defendants must prove that they are entitled to such credits. That if they found from the evidence that the sums mentioned in the receipts were paid in whole or in part to Likens, the former assessor, before the assessment rolls came into the possession of Allbright, the defendants would be entitled to credit for the amount of the taxes due the State so paid. The defendants asked the court to give the following instructions:

1. The jury must be satisfied from the evidence that the breaches complained of in plaintiff's petition accrued during the time for which the sureties on the bond sued on were liable.

2. The comptroller's account current does not furnish proof

44Y

either that any collections were made by Allbright, as alleged in plaintiff's petition, or that said collections were made during the year for which said sureties were bound.

3. Said comptroller's account, standing alone and unsupported by other proof, is not sufficient to show that the taxes therein enumerated were collected by Allbright.

4. Said account is insufficient without other testimony to prove a failure by said Allbright to make said collections. It was incumbent on the plaintiff to show affirmatively that said Allbright was directed by said comptroller to enforce the collection of the taxes of non-residents of his county for the years 1846 and 1847, in compliance with the provisions of the act of 20th March, 1848.

Which charges the court refused to give. The defendant offered the letters of the comptroller referred to in the opinion, which were objected to by the plaintiff because they were irrelevant, and tended to mislead the jury. The objection was sustained, and the testimony was excluded; to which the defendants excepted. The contents of the letters are sufficiently given in the opinion, for the purposes of this statement of the case.

The jury rendered a verdict for the plaintiff for the sum of eight hundred and fifty-six dollars and sixty-two cents, and judgment given thereupon accordingly.

The errors complained of by the appellant, so far as they need be here set forth, were—

1. Overruling the objections of defendants to the introduction of the account current of the comptroller general.

2. Sustaining plaintiff's objections to the introduction of the letters of instruction of said comptroller general of the 19th October, 1848, and 27th July, 1850, to said Allbright as evidence for defendants.

3. Refusing to give the charges asked to be given the jury b the defendants.

4. The charge of the court as given.

*Wm. M. Taylor*, for the appellant.

*Thos. J. Jennings*, also, for the appellant.—1. The alleged

irrelevancy and immateriality of the rejected letters of instruction.

This point invites our attention to three acts of the legislature, each entitled "an act to provide for the assessment and collection of taxes," passed May 13th, 1846, Hart. Dig., p. 935, *et seq;* March 20th, 1848, Ib. p. 945, *et seq;* and February 11th 1850, Ib. p. 954, *et seq;* and to a fourth act entitled "an act to provide for the more certain collection of the taxes for the years 1846 and 1847," passed March 20th, 1848, Ib. p. 943. The three first cited of these acts, each contains a provision in these words: "That every assessor and collector of taxes, *in the execution of the duties of his office,* shall use the forms *and pursue the instructions of the comptroller of public accounts."* (Hart. Dig., Art. 3101, 3141, 3179.) And the last cited act, with special reference to the matter here in dispute, the taxes of 1846 and 1847 on property of non-residents remaining unpaid at the date of its passage, (March 20th, 1848,) expressly commands the comptroller, "after making the comparison of assessment rolls" to direct sales to be made of the property of non-residents, &c., thus placing the matter of those sales peculiarly under his control, as he alone could "make comparison of the assessment rolls," and ascertain on what lands lying in counties in which the owners did not reside, the taxes had been assessed and paid in other counties. Indeed, after the passage of this act, and appellant did not go into office until the next fall after that time, instead of the presumption resting upon the assessor and collector of a breach of duty from the bare fact of not collecting the taxes of non-resident land owners, (and a sale was the only way of enforcing their payment,) as was held by the District Court in its charge, and in overruling the motion for a new trial, it might well be insisted that the assessor and collector had no power or rightful authority to collect, i. e. to sell lands for the taxes of non-residents without affirmative directions from the comptroller; for had they done so, it must necessarily have been in ignorance of what part of these taxes might have been paid elsewhere, involving the whole matter in confusion, working harrassing injustice to those owners who had paid their taxes elsewhere, and entrapping purchasers at the tax sales in a

manner disgraceful to the government. What rendered this and similar legislative provisions, (for instructions from the comptroller in regard to the collection by assessors and collectors of the taxes on property of non-residents,) absolutely necessary, in reference especially to those of the years 1846 and 1847, was, that the 21st sec. of the before cited act of 1846, (Hart. Dig., Art. 3108,) authorized the owners of property in counties other than those of their residence to pay the taxes thereon either to the comptroller, to the assessors and collectors of the counties in which they resided, or of the counties in which the property was situated.

The appellant is not at all responsible for the reasons of these restraining orders from the comptroller, and for the consequent delay in the collection of the taxes in question, which, by their operation, necessarily continued until the expiration of appellant's term of office; but, as stated by the instructing officer in the missives in question, they are judicially obvious and strikingly cogent. They hang upon the difficulty of putting the complicated machinery of a new government into harmonious action, especially in view of the great number of new counties formed at the two first sessions of the legislature. We conclude, then, that the legislature intended to confer upon the comptroller the authority and invest him with the discretion to give the instructions in question; but, in view of a recent denial, officially urged by our distinguished governor, of the power of the legislature to confer this authority, I may be asked, where is its source to be found? My answer shall be brief, and, I humbly trust, conclusive. The office of comptroller of public accounts is created simply by name, by § 23 of Art. 5, of the constitution, (the mode of his appointment is only changed by the constitutional amendment,) leaving, of course, the entire scope of his powers and duties to legislative prescription and regulation. The same must be said of the office of assessor and collector of taxes, with this difference, if it be any difference, that this office is expressly subjected to legislative regulation. (Const., Art. 7, § 29.) There would seem to be no limit to the power of the legislature in prescribing the duties and defining the authority of these officers, except in so far as it may be-

Allbright v. The Governor.

restricted by the grants of power to the other officers and departments of the government; but there is no pretence of the existence of any such inferential restriction upon the power here exercised.

I therefore respectfully ask the court to conclude that the first objection taken to the rejected instructions ought not to have been sustained, as, under the issues in the cause, these instructions appear to have been both relevant and material.

2. The remaining objection sustained to the admission of the instructions in question, in evidence, is " because defendant's (appellant's) return of delinquent and non-resident tax payers would be better evidence." This objection seems to present a proposition wholly independent of the main question here involved, and in no degree affecting its solution. It is a clear *non sequitur* to say that because an assessor did or did not make the return here required, he shall not have the benefit, upon an issue like the present, of instructions of the comptroller, which he was bound to obey.

BELL, J.—The parties to this suit have not taken the pains to make this record as intelligible by us as we could desire. We presume, however, that the expression "record assessment," employed by the comptroller in the statement of the account of the appellant, means the assessment of that property situated within the county which is owned by non-residents of the county. Nearly the whole of the account, as stated against the appellant, appears to consist of the amounts due upon these "record assessments" for the two years, 1846 and 1847. The two letters written by the comptroller to the appellant, which were offered in evidence, and ruled out, refer to the collection of this description of tax. We can perceive no reason why these letters should have been regarded by the court as irrelevant to the issue, or why they should not have been admitted in evidence. These letters instruct the appellant to desist from the sale of property for the purpose of collecting the non-resident assessment, until he should receive further instructions from the comptroller's office. These letters were written in October, 1848, a very short time after the appellant executed his bond, and in July, 1850, a very short time be-

fore the appellant's term of office expired.  It is also to be re-
marked that, by the provisions of the law of 1848, the bond of
the assessor and collector was only intended to secure the collec-
tion and prompt payment, according to law, of the taxes for one
year.  The law provided that the bond should be renewed at the
August Term of the County Court of each year.  The sureties
on the bond here sued on were only liable, then, for the acts of the
appellant during one year, and not during his whole official term.
It is beyond all question that the assessor and collector was sub-
ject to the instructions of the comptroller.  The various statutes
on the subject of the assessment and collection of taxes, have each
contained a provision that the assessor and collector should use
the forms and pursue the instructions of the comptroller of public
accounts.  We think, therefore, that the letters which were offered
in evidence, ought to have been admitted.  If the appellant has
collected the public money, and has failed to pay it over to the
State, as it was his duty to do, the State can certainly show the
fact, without asking the court to indulge in any presumptions or
conjectures on the subject.

We have not had our attention called to any statute which author-
izes a suit like the present to be maintained on the mere statement
of an account by the comptroller.  The fifth section of the act of
February 11, 1850, entitled " an act to provide for settling the
fiscal affairs of the late Republic of Texas," authorized a tran-
script from the books of the comptroller, certified by him and au-
thenticated under the seal of his office, to be admitted in evidence
in suits against the defaulting officers of the Republic ; but this
statute has no application to suits against the officers of the State
of Texas.  Neither does the 89th section of the District Court
act of 1846, apply to a mere statement of an account on the
books of the comptroller's office.  The section referred to provides
that " copies of the records of all public officers and courts of this
State, certified to under the hand and seal (if there be one) of the
lawful possessor of such records, shall be admitted as evidence in
all cases where the records themselves would be admissible."  This
provision cannot extend to an account stated on the books of the
comptroller's office, by the comptroller himself, or under his di-

rection; because to give the statute this meaning, would enable the comptroller to furnish the evidence to support any suit which he might think proper to advise the State's attorney to institute. Of course the official bonds, the assessment rolls, receipts, vouchers, and whatever documents are properly records of the comptroller's office, are within the meaning of the statute, and copies of them, properly certified and authenticated, are admissible in evidence, as the records themselves would be. For aught that is made to appear to us, the objection to the admissibility in evidence of the statement of the account by the comptroller was well taken. Such a paper would not be admissible unless its admissibility is authorized by statute. If there be any such statute, it has not been shown to us. Because of the error of the court below in refusing to permit the letters of the comptroller to the appellant, dated in October, 1848, and in July, 1850, to be read in evidence, the judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.