Syllabus.

## P. P. Rains v. Levi Simpson et al.

50 495
35a 255

1. LIABILITY OF OFFICERS.—Judicial officers are not liable to personal actions for official acts within their jurisdiction.

2. SAME.—This exemption extends not only to negligent, but to willful and malicious acts.

3. MINISTERIAL OFFICERS.—Judicial officers may be liable for their acts or refusal to act in regard to duties which are ministerial, and which duties are imposed upon them.

4. SAME.—Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed ministerial.

5. SAME.—Ministerial acts may be defined by adopting the rules allowing the writ of mandamus.

6. JUDICIAL ACT.—By section 20 of article 5 of the Constitution of 1869, the justices of the peace of the county constituted a court having the same jurisdiction formerly exercised by the Commissioners' and Police Courts, which constituted the County Court for county business; and by section 9 the district clerk was *ex-officio* clerk of the Police or County Court. By act of 13th Legislature, section 32, page 147, this County Court had the jurisdiction both to require of the sheriff as collector a new bond, and also to approve it.

7. SAME—APPROVING BOND.—The approval of a sheriff's bond is a judicial act.

8. MEMBERS OF COUNTY COURT.—The members of the County Court, as constituted under the Constitution of 1869, were not liable personally in a civil action, at suit of the sheriff, for having wrongfully and maliciously rejected his official bond.

### ON MOTION FOR REHEARING.

1. PLEADING.—That said justices of the peace failed to turn over the tax roll, regarded as inducement to the main charge, and as basis for damages in the action against them for refusing to approve the bond.

2. PLEADINGS—TAX ROLLS.—There having been no allegation that the consolidated tax roll required by the statute had been made out, it did not appear that the court was in default in not delivering such tax roll to the sheriff. The separate assessments by each justice were not required to be handed to the sheriff.

3. MANDAMUS—RETIRING OFFICERS.—A writ of mandamus against the County Court requiring that the tax roll be delivered to the tax collector, is abated by the going out of office of the members of the court, as against such retiring officers.

APPEAL from Rains.    Tried below before the Hon. Green
J. Clark.

*J. J. Hill,* for appellant.—This suit was brought by P. P.
.Rains, ex-sheriff of Rains county, May 22, 1876, against Levi
Simpson, Eli P. Magee, and John McMahan, ex-justices of
the peace and tax assessors of Rains county, for failing and
refusing to turn over and deliver to him the tax rolls of said
county, and for combining and confederating together to de-
prive him of the emoluments of his office, and maliciously
combining and confederating together to injure him in his
reputation, and to defeat him for reëlection to the office of
sheriff of said county.

The defendants demurred generally and specifically.

April 10, 1878, the court sustained the general demurrer;
to which plaintiff excepted and gave notice of an appeal.

The only error assigned is that the court erred in sustain-
ing the demurrer of the defendants.

The plaintiff, in his petition and amended petition, presented
a good cause of action.   (Gen. Laws of 1873, p. 124; Sedg.
on Meas. of Dam., ch. 21; Shear. & Red. on Neg., ch. 9;
Calder *v.* Halket, 2 Benn. & H. Lead. Crim. Cas., 308, and
note on 325; Shaw *v.* Brown, 41 Tex., 446; Crepps *v.* Durden,
1 Smith's Lead. Cas., 800.)

*L. D. King,* for appellees.

I. The petition does not disclose a good cause of action,
and is subject to a general demurrer.

This suit was brought by appellant against the appellees,
who composed the County Court of Rains county, because
they, as a court, required appellant to give a new bond, and
also for refusing to approve said bond when tendered them.
In March, 1876, appellant procured a peremptory mandamus
from the District Court of Rains county, compelling said
County Court to approve the said new bond and to turn
over the tax rolls.   (Salinas *v.* Wright, 11 Tex., 577; Lips-

comb v. Bryan, 22 Tex., 609; Sneed v. Moodie, 24 Tex., 159; Whitlock v. Castro, 22 Tex., 111; Robinson v. Peyton, 4 Tex., 276; Pryor v. Moore, 8 Tex., 252.)

II. Public officers who are required by law to act in certain cases according to their judgment or opinion, and acting under oath and subject to a penalty for neglect, are not liable for mistakes of judgment or want of skill, they having jurisdiction of the subject-matter. (Paschal's Dig., art. 7681; McDowell v. Van Duesen, 12 Johns., 356; Jenkins v. Waldron, 11 Johns., 114; Vanderheyden v. Young, 11 Johns., 150; Cunningham v. Bucklin, 8 Cow., 178; Wilson v. Mayor of New York, 1 Denio, 596; Horton v. Auchmoody, 7 Wend., 200; Harmond v. Brotherson, 1 Denio, 537.)

BONNER, ASSOCIATE JUSTICE.—The appellant and plaintiff below, P. P. Rains, as former sheriff of Rains county and ex-officio collector of taxes, sued the defendants, Levi Simpson and others, as former justices of the peace and ex-officio County Court of said county, for an alleged wrongful and malicious refusal to approve a new bond which they had required of him as such collector, and which had been tendered by him for approval, and had been rejected by them by order entered upon the minutes in open court, to his actual damages, in the loss of commissions, $1,000, and for exemplary damages.

On the trial the exceptions of the defendants were sustained and the cause dismissed, from which judgment this appeal is presented.

There were both general and special exceptions, but as the record does not show affirmatively any separate action of the court on the latter, we will consider the general exceptions only, which present the case of the plaintiff in its strongest aspect. The question, then, for our determination is this: Were the members of the County Court liable, personally, in a civil action, at the suit of the sheriff, for having wrongfully and maliciously rejected his official bond?

This question is one of first impression in this court, and we have endeavored to give it due consideration, both in the light of authority and upon principles of sound public policy.

We find for our guidance decisions of the highest courts of last resort. In the case of Yates v. Lansing, 5 Johns., 282, the question of the personal liability of judicial officers for official acts was most elaborately considered by Chief Justice Kent, and it was shown that, from the time of the Year-books, it was a settled principle and the very foundation of all well-ordered jurisprudence that every judge, whether of a higher or a lower court, in the exercise of the jurisdiction conferred on him by law, had the right to decide according to his own free and unembarrassed convictions, uninfluenced by any apprehension of private prosecution.

The learned chief justice considered this as a sacred principle which had a deep root in the common law, and said that "No man can foresee the disastrous consequences of a precedent in favor of such suit. Whenever we subject the established courts of the land to the degradation of a private prosecution, we subdue their independence and destroy their authority. Instead of being venerable before the public, they become contemptible; and we thereby embolden the licentious to trample upon everything sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty." (Id., 299.) This case, after full argument, was affirmed by the Court of Errors of New York. (9 Johns., 395.)

The principles upon which these decisions rest lie at the very foundation of all good government, — "the greatest good to the greatest number." As has been well said in this connection by an eminent judge, "In the imperfection of human nature it is better that an individual should occasionally suffer a wrong, than the course of justice should be impeded and fettered by constant and perpetual restraint and apprehension on the part of those who are to administer it."

(Lord Tenterden, Ch. J., in Garnett *v.* Ferrand, 6 B. & C., cited in Cooley on Tax., 552, note 1.)

This privilege is not intended so much for the protection of the judge as an individual, as for the protection of society, by preventing the scandal and embarrassment which would follow should the judicial department, which represents one of the most sensitive and vital parts of sovereignty, be subjected to the separate prosecutions of private parties. As a delegated part of this sovereignty, the actions of the judiciary represent and affect the public; and if there is in the judge presiding such a departure from that true dignity and spotless purity which should characterize the high trust and confidence reposed, he is subject to be arraigned, punished, and removed from office by indictment or impeachment, at the suit of that power from which he derives his authority. As in many other cases by the common law, the private injury is merged into the public wrong, and by our laws protection is intended to be given to society, and indirectly to the individual, by the removal from office and punishment of the offender. (Const. 1869, art. 5, sec. 10; 2d Sess. 14th Leg., 48.)

From the very necessity of the case, this immunity from private liability extends not only to negligent, but willful and malicious judicial acts. As said by Chief Justice Shaw in Pratt *v.* Gardner, 2 Cush., 69: "If an action might be brought against the judge by a party feeling himself aggrieved, the judge would be compelled to put in issue facts in which he has no interest, and the case must be tried before some other judge, who in his turn might be held amenable to the losing party, and so on indefinitely. If it be said that it may be conceded that the action will not lie unless in a case where a judge has acted partially or corruptly, the answer is, that the losing party may always aver that the judge has acted partially or corruptly, and may offer testimony of bystanders or others to prove it; and these proofs are addressed to the court and jury, before whom the judge is called to

defend himself, and the result is made to depend not upon his own original conviction, (the conclusion of his own mind in the decision of the original case,) as by the theory of jurisprudence it ought to do, but upon the conclusion of other minds, under the influence of other and different circumstances."

To the same effect is Weaver *v.* Devendorf, 3 Denio, 117, in which it is said, by Beardsley, J.: "But I prefer to place the decision on the broad ground that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which prompted it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges from the highest to the lowest; to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power."

That able jurist, Judge Cooley, in a valuable contribution on this subject in 3 Southern Law Review, (N. S.,) 547, says: "But our own view is, that the doctrine that a public officer, acting within the limits of his jurisdiction in the discharge of a discretionary duty, can be held liable upon an assumption that he has acted willfully or maliciously, is an exceedingly unsatisfactory and dangerous one; and that those decisions are safest and most consonant to public policy which deny it altogether. Motives are not always readily justified to the public, even in cases where they have been purest; and the safe rule for the public is that which protects its officers in acting fearlessly, so long as they keep within the limits of their legal discretion;"—citing in note 26 Sage *v.* Lanrain, 19 Mich., 137; Cooley on Tax., 552. To the same effect are Shear. & Red. on Neg., 157; Wilson *v.* The Mayor, &c., 1 Denio, 597.

It remains but to inquire whether the alleged wrongful and malicious act on the part of the County Court was such

a judicial act as would protect from liability at the suit of a private party.

By section 20 of article 5 of the Constitution of 1869, then in force, the justices of the peace of the county constituted a court, having the same jurisdiction formerly exercised by the Commissioners' Court and Police Court, which constituted the County Court for county business; and by section 9 the district clerk was *ex officio* clerk of the Police or County Court. By act of the 13th Legislature, 147, sec. 32, this County Court had the jurisdiction both to require of the sheriff, as collector, a new bond, and also to approve or reject it.

The application of the principle of immunity from private suit has been a source of difficulty, the practical solution of which depends upon whether the given act was ministerial or judicial. As a general rule, in the former case the action will, and in the latter it will not, be sustained.

The distinction between the two is thus defined: " Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial." (Commissioner *v.* Smith, 5 Tex., 471; Arberry *v.* Beavers, 6 Tex., 467.)

Perhaps as safe criterion as any other, to ascertain whether a private suit would or would not lie, is to adopt the rule which governs in cases in which a mandamus would or would not be granted.

Mr. High, in his work upon Extraordinary Legal Remedies, says: " But the most important principle to be observed in the exercise of the jurisdiction by mandamus, and one which lies at the very foundation of the entire system of rules and principles regulating the use of this extraordinary remedy, is that which fixes the distinction between duties of a peremptory or mandatory nature and those which are discretionary in their character, involving the exercise of some

degree of judgment on the part of the officer or body against whom the mandamus is sought.    This distinction may be said to be the key to the extended system of rules and precedents forming the law of mandamus."    (Sec. 24.)

" Thus, where it is made the duty of a clerk of a court to approve the bonds of all county officers, the act of approval is considered so far judicial in its nature that mandamus will not lie to control the judgment of the clerk as to the approval of the bond presented."    (Sec. 46.)

"And where the court has passed upon and adjudicated the question of the sufficiency of the bond in a judicial proceeding, mandamus will not lie."    (Sec. 164.)

"And where certain town officers are intrusted by law with the power of approving the sufficiency of sureties upon the bonds of town constables and of fixing the amount of the bonds, they will not be required by mandamus to approve a particular bond tendered."    (Sec. 326.)

The action, then, of the County Court being a judicial act in the exercise of the jurisdiction conferred by statute, the exceptions of the defendants were properly sustained, and the judgment below is accordingly affirmed.

AFFIRMED.

ON MOTION FOR REHEARING.

*J. J. Hill,* for motion for rehearing.—The gravamen of the plaintiff's complaint is not, as indicated by the court in its opinion, that the defendants refused to approve of his bond, but that the defendants refused to turn over to him the tax rolls of Rains county for the year 1875.    This complaint is distinctly made in every pleading filed by the plaintiff; in the petition, in the replication, in the amended petition.    It is presented in two phases: First, that it was the duty of the defendants to have turned over said rolls on or before the 1st of June, 1875; second, it was the duty of the defendants to have turned over the said rolls in obedience to the peremptory mandamus granted.    And I might add, third, it was

the duty of the defendants all the time, from the 1st of June, 1875, to the 1st of October, 1875, to have turned over said rolls; for during all this time there was not a pretext of excuse for not turning over said rolls.

The complaint we make is that this court has not passed upon the most material part of our case. The opinion of this court on its face appears to be correct, but the case made by the plaintiff in the court below by his pleadings, and exhibited to this court by the transcript of the record, has not been decided by this court. The approval of an official bond involves much more official discretion than the turning over the tax-rolls.

This court seems to have fallen into two errors—

1. It overlooked the fact that it was the duty of the defendants to have turned over the said rolls by the 1st of June, 1875, and that there was no complaint made against the sheriff until October 1, 1875; that during this time there was not the pretext of an excuse on the part of the defendants; that the sheriff, all this time, was in the full discharge of all the functions of his office; that no new bond was required of him until October 1, 1875. I repeat that all these four months the court failed to note that a plain duty was incumbent on the defendants to turn over said rolls.

2. The court seems to be of the opinion that the requiring of the plaintiff to give a new bond suspended him in the discharge of the functions of his office. The court could not fall into a graver error affecting this case. The requiring the plaintiff to give a new bond by the County Court did not suspend him. The County Court could not suspend him. The district judge alone could suspend him. (Gen. Laws of 1874, p. 98.) The County Court could remove the sheriff. (Gen. Laws of 1874, p. 93.) That court—or, rather, body, for it was not a court, as we shall presently see—could declare his office vacant, but only on one contingency, and that specified in the act above referred to. That body, (the County Court,) when any of the sureties were non-residents of the

county, could require the sheriff to give a new bond; and in case he failed within twenty days to give the new bond, they could, and it was made their duty to, declare his office vacant. (Gen. Laws of 1874, p. 93.)

Plaintiff's petition shows that he was the sheriff of Rains county from 1872 until April, 1876. As such he was certainly entitled to the tax rolls. If he had not given sufficient bonds, any citizen could make complaint against him, under the act of 1874, (Gen. Laws, p. 98,) and the district judge could suspend or remove him. This statute was supposed to afford ample security to the public and to the county. The County Court had no power in the premises outside of that in the act of April 14, 1874. (Gen. Laws, p. 93.) It would have been a most unfortunate state of things, indeed, if the County Court, under the Constitution of 1869, had the power at pleasure to suspend the sheriff.

The County Court, under the Constitution of 1869, was not a court, in the legal sense of the term. (Const. of 1869, art. 5, sec. 20; 2 Paschal's Dig., arts. 6112–6121.) Their orders were not judgments. The approval of a claim and order that it be paid was not a judgment. It only amounted to a contract. (Dill. on Mun. Corp.)

The most of the acts of the said " court " were mere ministerial acts. Certainly all of their acts in regard to the assessment of the taxes were ministerial acts. The County Court was the mere agent of the county, with functions of a mixed character,—*quasi*-political and *quasi*-judicial in some instances. It certainly ranked very low as a court.

It was the duty of the defendants to have turned over to the plaintiff the tax rolls of Rains county for the year 1875 on or before the 1st of June, 1875. The defendants did not have the pretext of an excuse for not turning over said rolls before the 1st of October, 1875. The sheriff was entitled to the said rolls even though he was required to give a new bond. It became the imperative duty of the defendants to turn over said rolls when a peremptory mandamus was

granted against them.   The above presents the principal
propositions applicable to the case before the court, and
could have very properly been laid down under appellant's
assignment of error.   The plaintiff's case, presented in its
abstract form, can be stated thus : A duty was incumbent on
the defendants.   The plaintiff was interested in its perform-
ance.   The defendants failed to discharge it, to the damage
of the plaintiff $1,000.   Or it might be stated thus: A duty
in which the plaintiff was interested devolved on the defend-
ants.   The defendants failed to discharge that duty, to the
damage of the plaintiff.

But it may be urged that it is a conclusion of law that it
was the duty of the defendants to have turned over said rolls.
In reply to this, we answer, the demurrer admits that it was
their duty as charged ; but lest we are not correct in this
position, the duties of the defendants in this respect, it may be,
being a matter of law, we now here maintain that this court
will take judicial notice that it was the duty of the defend-
ants, under the tax laws then in force, and under the instruc-
tions of the comptroller, which was law to the assessors and
collectors of taxes, and law to the defendants in the matter
of turning over their rolls, to have turned over to the plain-
tiff the said rolls on or before the 1st of June.   The Consti-
tution of 1869, as well as all of our Constitutions, provides
that the comptroller "shall give instructions to the assessors
and collectors of taxes."   The plaintiff charges that it was
the duty of the defendants to have turned over the said rolls
for 1875 by June 1, 1875.   Proof that such were the instruc-
tions of the comptroller would have sustained this allegation.
(Allbright *v.* The Governor, 25 Tex., 687.)   The taxes of
1875 were collected under the tax law of 1873.   (Gen. Laws,
p. 124.)   While this act does not provide when the tax rolls
shall be turned over, yet the instructions of the comptroller
framed under it did require them to be turned over by the
1st of June.   The instructions of the comptroller in this re-
spect conformed to the act of 1870.   Whether this act was

wholly repealed by the act of 1873, I am not clear; but be that as it may, the uniform instructions of the comptroller to the assessors and collectors of taxes were that the tax rolls of each year should be delivered to the sheriff on or before the 1st of June of each year. These instructions were obligatory on the defendants; hence a duty, and evidently a ministerial duty.

Can it be possible that a duty devolving on an inferior officer, by reason of instructions from his superior officer, could be other than a ministerial duty? The primitive idea of a ministerial duty is that it is an obligation imposed by a superior. This court have laid down, in their opinion in this case, as a general principle, that an officer is responsible at the suit of an individual only for ministerial acts—only for breaches of ministerial duty. While this rule is narrower than is warranted by the weight of authority, yet I am willing to adopt it in determining the responsibility of the defendants in this suit. The question, then, is, what is a ministerial duty? I will accept the definition adopted by the court in this case: "Where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of the discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial." Applying this definition to our case, did not the law prescribe and define the duty of the defendants in regard to turning over the said tax with such certainty and precision? The comptroller had instructed them to turn over the said rolls by the 1st of June. This was law to the defendants. Had they any discretion? Was not this duty within the meaning of a ministerial duty as defined by High? (High on Man., sec. 80.) Was it attended with any degree of official discretion? Was the turning over the said rolls a judicial act? Did it require any order entered on the minutes of their court to turn them over? Or if it did, was the turning over the said

rolls a question to be determined by them? Could they deliberate whether or not it was their duty to turn over said rolls? Did it require them to exercise the functions of a court to turn over the said rolls? Could not they have been compelled by mandamus to have turned over said rolls? And, perhaps, whether mandamus would lie, is the proper test whether this was a ministerial duty. Can there be any doubt as to mandamus lying? Mandamus will lie to compel Commissioners' Courts to levy taxes. It will lie to compel proper officer of county to assess the taxes. It will lie to compel proper officer to collect them. The levy, the assessment, and the collection of taxes involve the whole subject-matter of taxation. Is it possible that mandamus will reach all these and not reach a minor detail, such as turning over the tax rolls? I deem it unnecessary to refer to the numerous cases to be found scattered through the reports, where mandamus has been granted to inferior courts or bodies exercising functions similar to our County Court under the Constitutions of 1869.

"In some of the States," says Mr. High, sec. 232, "the auditing and the payment of claims for public services rendered to a county are made the duty of inferior courts, such as County Courts, and in such cases the same rule applies, and the duty may be enforced by mandamus." (See the authorities referred to by the author; also, The People *v.* The Supervisors of New York, 32 N. Y., 473; People *v.* Supervisors, 10 Wend., 363; 19 Johns., 272; 5 Cush., 292.) Inferior courts may be compelled by mandamus to approve an official bond. (High on Ex. Legal Rem., sec. 231.) "The approval or rejection of the bond," says the author just referred to, "in such a case, though coupled, it is true, with some degree of discretion, is held to be essentially a ministerial act, and, as such, mandamus will lie to compel its performance." The author refers to a number of cases in support of this proposition. (41 Mo., 221; S. C., 545; 44 Mo., 230; 43 Ala., 568; 43 Mo., 117.) The paragraph quoted is certainly more in

point than section 46, quoted by the court; and more in point, perhaps, than section 164,—at least supported by legal authority; and more in consonance with the spirit of the age and the increased necessity for mandamus.

The court in its opinion only considered this one question: "Were the members of the County Court liable personally in a civil action, at the suit of the sheriff, for having wrongfully and maliciously rejected his official bond?" The court concludes that they were not, and in support of this conclusion refers to a number of authorities. I feel confident that a more critical and extended examination by the court of the authorities on this point will satisfy the court that the judicial privilege does not extend to the County Court, acting as the Police Court of the county, in such a matter as we complain of. "An additional qualification," say Shearman & Redfield on Negligence, 160, "is attached to the rule of judicial privilege, as applied to inferior magistrates, which does not apply to judges of a court of record, and that is, that the act complained of, though judicial and within the jurisdiction of the officer, must have been done honestly and in good faith." See the great number of cases referred to by the authors, in which justices of the peace have been held responsible in a civil suit. The court in its opinion in this case have not drawn the distinction between courts of record and of general jurisdiction and inferior courts.

The first case referred to by the court, and quoted from at length by the court, (Yates *v.* Lansing, 5 Johns., 282,) was a suit against a chancellor by a party committed for a contempt. The rule has been, upon the authority of Lord Coke, that since the Year-books such a suit could not be maintained. But in this very case the court says: "A superior court of general jurisdiction is not liable to answer personally for acts done by them in a judicial capacity; as, for errors of judgment." The next case referred to by the court, (Pratt *v.* Gardner, 2 Cush., 63,) was, it is true, a suit against a justice of the peace, but he was sought to be held responsible for

a purely judicial act, and though malice was charged the court excluded it from their consideration of the case.

The acts complained of, to say the most of them, were only *quasi*-judicial acts. They certainly partook more of a ministerial than of a judicial character.

The District Court of Rains county by a peremptory mandamus commanded the defendants to turn over and deliver to the plaintiff the tax rolls of Rains county for the year 1875. The court has wholly overlooked this in its opinion. If there was any discussion before, there was certainly none after this writ was granted. No matter how erroneous it might have been, it was not a nullity. It was binding on the parties until set aside by some direct proceeding. The said mandamus further commanded the defendants to approve the plaintiff's bond. This may have been error, but it was not void. It was obligatory on the defendants until set aside. This court cannot question its validity in this suit.

This case presents a new question to this court. It has been decided without the aid of counsel. The court, from necessity, pressed with business as it is, could only give it a hasty investigation.

This court have failed to mark the distinction recognized by all the authorities between superior and inferior courts. The court have laid down the rule correctly as applicable to superior courts, and applied it to an inferior court, or, rather, to a body scarcely recognized as a court. The only decision I have been able to find in our reports touching the question (Bumpus *v.* Fisher, 21 Tex., 561) recognizes this distinction. Roberts, Ch. J., in delivering the opinion in this case, says: "All courts are and should be responsible for malicious acts, corruption, and oppression; the superior, by impeachment of the judges; the inferior, by indictment and civil suits before the superior courts." In this case the justice who was sued was held not responsible, because the act complained of was in his jurisdiction, and want of jurisdiction was the foundation of the charge.

In Bradley *v.* Fisher, 13 Wall., 342, where one of the justices of the Supreme Court of the District of Columbia was sued for disbarring an attorney, the distinction between superior and inferior courts is recognized. It is also worthy of note that Justices Davis and Clifford held in that case that judges of superior and general authority, when they exceeded their jurisdiction and acted corruptly, were liable in a civil suit.

I earnestly ask the court to grant a rehearing in this case. I feel confident that it will be more satisfactory to the court for them to examine more at length the authorities.

BONNER, ASSOCIATE JUSTICE.—The rehearing in this case is sought, for the reason, substantially, that the court in the former investigation overlooked the alleged material issue presented by the pleadings, the liability of the defendants, not in their collective capacity as a County Court, but as individual justices of the peace, for failure to turn over by the 1st of June, 1875, the tax rolls for that year; and in this connection for failure to obey the peremptory mandamus from the District Court requiring them to turn over said rolls and to approve the new bond required of plaintiff.

In the examination of the record in this case, when the same was first before the court, we were of opinion that the gravamen of plaintiff's cause of action was the alleged wrongful and malicious refusal by the defendants, as a County Court, to approve the new bond required of plaintiff as collector of taxes; that the allegations as to defendants having been justices of the peace, and having failed to turn over the tax rolls, were mere matters of inducement and as a basis for actual damages. A careful reëxamination of the record, in view of this motion, confirms us in the opinion first entertained. The whole theory and presentation of the case by both parties, as we understood it, supported this view. Certainly neither under the statute nor the instructions of the comptroller had the individual justices of the peace authority to turn

over to the plaintiff their separate rolls as assessors. It is not alleged that the consolidated roll required to be made had ever been prepared or was ready for delivery. No definite time was fixed by law when the same must have been delivered.

By the act of 1873 (Laws 13th Leg., 147) the plaintiff was suspended from office as collector of taxes, by the order of the County Court requiring the new bond, until the same was given and approved. The subsequent act of 1874 (14th Leg., 98) was, by its express terms, cumulative.

According to the allegations in the petition, the peremptory writ of mandamus did not issue until about ten days before defendants went out of office, and it is not shown when it was served, whether before or after. It further appears from the record that an appeal had been taken by the defendants from the judgment granting the writ.

As to the defendants themselves, whatever might be the rule as to their successors, the writ abated with their retirement from office, as they had no longer any control over the assessment rolls. (United States *v.* Boutwell, 17 Wall., 604.)

Upon the main question before considered, we see no reason why we should not adhere to our former opinion.

MOTION OVERRULED.