## B. S. HARKREADER v. THE STATE.

*No. 1233. Decided November 27th, 1895.*

**1. False Swearing to Procure a Marriage License—Evidence.**

On a prosecution for false swearing, to procure a marriage license, where the State was permitted to prove that the father and mother of the female minor objected to her marriage with defendant, and it was objected that the evidence was immaterial and not authorized by any allegation in the indictment. Held: The evidence was admissible to controvert the alleged false affidavit of defendant, to the effect, that there were no legal objections to said marriage, which affidavit was traversed by the indictment.

**2. Same—Evidence.**

On a trial for false swearing, to procure a marriage license, it was not error for the court to exclude proffered evidence of the defendant, to show that pending his engagement to the young lady, he had made her many presents, which she still retained in her possession, with the knowledge and consent of her parents, such evidence not being material.

**3. Same—Making Oath Before a Minor Who was Deputy Clerk—Validity of Such Oath.**

On a trial for making a false affidavit, to procure a marriage license, where defendant's contention was, that said affidavit was invalid, because the same was taken before a Deputy County Clerk, who was a minor, and consequently incompetent to hold said office and administer oaths. Held: There being no law prescribing the qualifications of a Deputy County Clerk, a minor is eligible to receive appointment to such office; and being eligible to hold the office, he is competent to perform and execute all ministerial duties for his principal, and also to administer all oaths

and affirmations, and take affidavits and perform all such like official acts as may be legally done and performed by the County Clerk in person.

### 4. Same—County Clerk—Administering Oaths.

The power to administer oaths and affidavits by a County Clerk, appertains to his office, and belongs to his official duties; and his deputy, in this regard, has such power and authority as his principal can exercise.

### 5. Same—Judicial and Ministerial Acts.

The act of a Deputy County Clerk, in granting a marriage license, though he has the right to inquire into the status of the parties and their eligibility to intermarry, is not a judicial act, but only one of such skill and diligence as appertains to a ministerial officer. DAVIDSON, JUDGE, dissenting, holds, that a deputy clerk is not limited to the performance of acts purely ministerial.

APPEAL from the District Court of Johnson. Tried below before Hon. J. M. HALL.

This appeal is from a conviction for false swearing, in an affidavit made to procure a marriage license, the punishment assessed being a term of two years' imprisonment in the penitentiary.

The indictment charges: "That B. S. Harkreader, in 'the County of Johnson, State aforesaid, on the 20th day of May, in the year of our Lord, 1895, with force and arms, did unlawfully, voluntarily, deliberately and wilfully, under oath, then and there legally administered to him by O. L. Bishop, Deputy County Clerk of Johnson County, Texas, the said O. L. Bishop being then and there authorized by law to administer said oath, make the following voluntary and false statement, and declaration and affidavit, in writing signed by him, in the following words; that is: 'The State of Texas, County of Johnson. I, B. S. Harkreader, do solemnly swear, that I am 21 years of age, and that Miss Ruby Lee Porter is 18 years of age, and that there are no legal objections to our marriage;' and whereas, in fact and in truth, the said Miss Ruby Lee Porter was not 18 years of age, and there were legal objections to their marriage," etc.

O. L. Bishop testified: That he was Deputy County Clerk of Johnson County; that he was 20 years old on the 20th day of May, 1895; that on that day defendant, Harkreader, applied to him, at the County Clerk's office, for marriage license to marry Miss Ruby Lee Porter. I administered the oath to him; it was a written affidavit, as follows:

"STATE OF TEXAS, }
COUNTY OF JOHNSON. }

"I, B. S. Harkreader, do solemnly swear, that I am 21 years of age, and that Miss Ruby Lee Porter is 18 years of age, and that there are no legal objections to our marriage.

"(Signed)     B. S. HARKREADER."

"Subscribed and sworn to before me, this 20th day of May, 1895.

S. P. RAMSEY,
"Clerk, County Court of Johnson County.
"By O. L. BISHOP,
"Deputy."

Witness identifies the affidavit shown him, saying, "Yes, that is the same affidavit; I saw Harkreader sign it; that is his signature, and I swore him to the same after reading it to him."

Mrs. Porter, mother of Ruby Lee, testified, in substance: "That defendant came to board at the hotel, kept by her husband and herself, in January or February, 1894. She soon discovered that he was paying too much attention to her daughter. That in April or May following, she spoke to him about it, telling him that Ruby was nothing but a child, not being at the time 16 years of age, and too young to receive his attention. He left the hotel in a short time thereafter. I was opposed to Ruby's marrying the defendant, and never, at any time, gave my consent to it. After the defendant was arrested on this charge, I did meet the defendant, my daughter being with me, and did tell him that I had no objection to their marriage when Ruby became 18."

J. W. Porter, father of Ruby Lee, testified: "That his daughter, at the time he was testifying, would soon be 17 years old; that defendant had boarded at his hotel; that he, witness, had objected to his paying attention to his daughter, and made him leave the hotel; that he was opposed to his marrying Ruby, and he had never given his consent for him to marry her."

Miss Blanche Harding testified: "That some two or three weeks before the date at which the affidavit, in this case, was made, I told defendant that Mrs. Porter had asked me to say to him, that if he would wait until Ruby was 18 years old, she could then do as she pleased; and if Ruby then wanted to marry him, she would say nothing."

Miss Ruby Lee Porter, for defendant, testified: "That she was engaged to be married to defendant, and had been for several months, which fact was known to her father and mother; and she had frequently talked to them about it. She had always told defendant that her age was 18 years; never told him anything else. That her father and mother objected to defendant's boarding at the hotel, and he left there in May, 1894. Since that time, she had met him at different places in town, and had corresponded with him all the time. That on the night before defendant applied for marriage license, she met him in the back yard of the hotel; told him that if he would get the license they would get married. That her parents had always objected to the marriage, and that defendant knew it. That her father was in Houston on the night before the defendant got the license, when she met him in the yard."

B. S. Harkreader, defendant, testified: "That he was engaged to be married to Miss Ruby Lee Porter; that he made the affidavit in question, and that at the time he made it, he believed Miss Ruby Lee was 18 years of age. She had always told him she was 18 years old. And, when she told him she was 18, he believed what she said; would have believed anything she told me. He denied that Mrs. Porter, the mother of Ruby, had ever told him that Ruby was only 16 years old. Had no remembrance of Mrs. Porter ever having said anything to him about her age. Had no remembrance of Miss Blanche Harding having deliv-

ered a message to him from Mrs. Porter, to the effect, that Mrs. Porter would be willing for the marriage to take place, if he would wait until Ruby was 18 years of age. He testified that he had met Mrs. Porter and Ruby after he had been arrested on this charge, and that Mrs. Porter told him, in the presence of Ruby, at that time, that she had no objection to their marriage when Ruby arrived at the age of 18."

On cross-examination, defendant testified: "That since his acquaintance with Ruby Porter, he had never had reason to believe that she was not 18 years of age. That he was famliarly known as 'Slim.' Sometimes signed 'Slim' to letters which he had written. That he had written to Miss Ruby, at Dallas. He was here handed a letter, dated Dallas, Texas, April 17, 1895, addressed to Miss Ruby, and signed 'Slim.' It was a regulation love letter, of about sixteen pages. He admitted that he wrote the letter, which contained this sentence: 'Bless your heart, your Slim has done all he knows what to do to get you, whilst you are not of age.' He said he did not consider himself responsible for anything in that letter, for his trouble was very great at that time. He was handed another letter, addressed to Miss Porter, dated Dallas, Texas, April 28th, 1895, which he acknowledged writing—it being another love letter. And, being shown a sentence in said letter, as follows: 'Dear Ruby, do believe me; I will be true and faithful to you until you are 18, and *then*, Angel One, you can do as you please.' He said he didn't know what he meant by it, and didn't consider himself responsible for anything that was in those letters." Witness admitted, that at the time he made the affidavit, he knew that the father and mother of Miss Ruby Lee objected to the marriage, and that it was his intention to steal her away from home, and marry her over their protest. Defendant's letters of April 17th and 28th, 1895, above mentioned, were read in evidence.

A bill of exceptions was saved by defendant, to the action to the court, in permitting the State to prove, over his objection, that the father and mother of Miss Porter objected to the marriage. The objection being, that the evidence was wholly immaterial. That the indictment only charged that there were legal objections to the marriage, but did not allege, that the parents of Miss Lee objected to the marriage. Defendant also saved a bill of exceptions to the correctness of the ruling of the court, in refusing to allow the defendant to prove, by Miss Ruby Lee Porter, and by both of her parents, and also by the defendant himself, that before the defendant made the affidavit in question, he bought and sent to Miss Ruby Lee Porter, at the residence of her father and mother, household and kitchen furniture, such as carpets, rugs, bedding, sheets, towels, tableware, napkins, and such other articles of furniture as those contemplating marriage usually buy, with the view of keeping house, and that he had also presented Miss Ruby Lee with a gold watch and chain and two diamond rings, and that Miss Ruby Lee, with the full knowledge of her parents, received all of said property, and that she was, at the time defendant made said affidavit, engaged in making her wedding outfit, and preparing said table napkins, tablecloths, etc., with

the view of marrying the defendant and keeping house with him, and that she, with the full knowledge and consent of her parents, retained possession of all of said property. Defendant also objected to the introduction in evidence of the affidavit, made by defendant to procure said marriage license, because: (1) It appeared that O. L. Bishop, the party who administered said oath, as Deputy County Clerk, was, at the time, a minor, under the age of 21 years, and could not act as Deputy Clerk, and that the affidavit was therefore void. (2) Because said affidavit being one not required to be taken by the County Clerk, in the discharge of his official duty, the deputy could not take the same for the County Clerk.

*Poindexter & Padelford*, for appellant.—We submit that O. L. Bishop, being a minor at the time he took the affidavit in question, the affidavit is void for that reason alone. Mr. Schouler, in his work on Domestic Relations, Section 394, says: "The modern doctrine seems to be clear that no office of pecuniary and public responsibility can be conferred upon an infant."

In the case of Smith v. the State, 14 Wis., p. 497, it is Held: That an alien cannot hold an office. This opinion was re-affirmed in the case of the State v. Murphy, 28 Wis., p. 96. These two cases are quoted with approval by McCreary on Elections, p. 213. Mr. McCreary holds that a person ineligible to office cannot hold said office until his disabilities are removed.

In the case of Lombard v. the People, 76 N. Y., pp., 235 to 237, the question arose whether in a criminal prosecution the defendant could show that the officer before whom the affidavit was made, did not reside in the city of New York at the time. The trial court held that the defendant could not show this fact, for the reason that he was at least a de facto officer, and was entitled to administer the oath as such. The Superior Court of New York, in passing upon this question said: "Conceding as a general rule that the governor may appoint an alien or a convict felon, or a minor, or other person who is disqualified from holding a civil office, to an official position, and that inquiry cannot be made as to the title of the office collaterally. There is no reason why such a doctrine should prevail where the jurisdiction of the officer and his power to administer an oath, is a subject of controversy and dispute, and a contest is made upon that point on the trial of an indictment for perjury. As we have seen, the power, the authority, and the right of the officer to administer the oath is the very foundation of the charge and the basis upon which the offense rests, and, hence, it is a matter which must be lawfully proved; without testimony to establish this matter of fact, the indictment cannot be upheld, and the whole charge must fail, and when such evidence is introduced the right to contradict it is clear and unequivocal, and cannot be controverted by presumptions that the appointing power has performed its duty." The court further held in that case that, the officer not being a resident of New York, had

no authority or power to act within, and that the affidavit was void. This decision was concurred in by a full bench.    76 N. Y., pp 235 to 237.    The court will observe that, by this decision, the Supreme Court of New York classes non-residents, aliens and minors together.    It follows that an affidavit taken before an alien or non-resident is void, so an affidavit taken before a minor is likewise void.

In the case of Golding's Petition, 24 Amer. Rep. p. 67, an affidavit was taken by a Justice of the Peace, charging the defendant with a criminal offense.    It was shown that the Justice of the Peace was a minor, and the Supreme Court of New Hampshire held it was a nullity. Judge Cushing in delivering the opinion says:  "Being in the eye of the law infants, i. e., speechless, or in other words, unable to speak for himself in minor matters, unable in the eye of the law  to exercise sufficient judgment to bind his property by the purchase of a penny whistle, or by a promissory note for any sum, however small, the idea that the same law would permit him to exercise judicial power over the liberty of persons, or the property of his fellow-citizens, is simply absurd."

Tyler on Infancy, p. 37, says:  "Nor can a minor be legally appointed clerk of a court of requests, when it is a part of the duty of that office to receive the money of suitors."

The authorities are ageed upon the proposition that "no infant can perform any kind of official act requiring  the exercise of judgment and discretion."

In the case of Raines v. Simpson, 50 Texas, 501, our court, in treating the distinction between a ministerial and judicial act, says: "Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing  to  the exercise of judgment or discretion, the act is ministerial, and where the act to be done involves the exercise of discretion and judgment, it is not deemed ministerial." See Commissioner v. Smith, 5 Texas, 471; Arberry v. Bevers, 6 Texas, 467.

The law does not require a County Clerk to take an affidavit from an applicant for a marriage license.    It is no part of his official duty.    If he requires it it is simply for his own protection.    And where he feels assured of no risk he would not require it, and none would be made. Hence the question as to when he should and should not require an affidavit is one of judgment and discretion, to be passed on as the emergency arises, and this judgment and discretion could not  be conferred upon an infant, neither could it be exercised by an infant.    The act of issuing a marriage license is a ministerial act, it is true, but the act of determining who was entitled to the license, is an act involving judgment and discretion.    All persons are not entitled to marry.    Art. 265, Penal Code, makes it an offense for a clerk to issue a marriage license to a male person under the age of 21 years, or to a female person under the age of 18 years, without the consent of the parents or guardians of such person.    The County Clerk must, in every instance, determine at his own peril, upon the facts as presented to him at the time when the

application is made for the marriage license, whether the applicant is entitled to the license.  This very act of determining whether the license should or should not be issued, is one involving judicial discretion, and an act that cannot be performed by an infant.  In this case we have the anomaly of an infant Deputy County Clerk passing upon the elligibility of an infant girl to marriage, and after requiring an affidavit of the defendant, he decided that the license could be properly issued and the marriage proceed.  This act upon the part of the Deputy County Clerk, Bishop, being one involving the exercise of discretion and judgment, was absolutely void.  The indictment in this case alleged that the said O. L. Bishop was then and there authorized by law to administer said oath, and it devolved upon the State to show this fact.  And we submit that the moment it appeared that Bishop was a minor, under the age of 21 years, that moment it affirmatively appeared that he was not a person authorized to administer the oath.  He could not be held responsible upon his contract, not even for a cigar.  He could not be held responsible in an action for damages for a failure to discharge any duty, for, being an infant, he owes no duty to the public, save and except to obey the criminal laws of the State.  He could not therefore be charged with the responsible duties devolving upon him as deputy clerk of a County Court.  Public policy requires that the business of the public shall be transacted by those persons who are in law responsible for their acts.  Be this as it may, the proposition cannot be successfully controverted, that the State having alleged in the indictment that the oath in question was administered by a person authorized by law to administer it, the prosecution could not sustain this allegation by proving that the oath was made before an infant, without at least showing that his disabilities had been removed, and that he was authorized to perform all the duties of a citizen, except that of voting.  Our law, in its tender regard for the precocity of the youths of Texas, has made provision for the removal of disabilities, and declared when a minor, under the age of 21 years, may perform such responsible duties as were attempted by the Deputy County Clerk in this case.

But outside and beyond the question of infancy, we contend that the Deputy County Clerk had no authority to take the affidavit in question, and that the affidavit is absolutely void, for the reason that the laws of this State do not make it the duty of County Clerks to take such affidavits.  The County Clerk himself has general power to take affidavits, and could have taken this affidavit himself, but Deputy County Clerks not having general power to take affidavits, and being the deputy to perform the official acts required of the County Clerk, and none other, he could not go beyond his official acts and take an outside affidavit, as such deputy.

With reference to the duties and powers of Deputy County Clerks, Revised Statutes, Art. 1146, provides: "Such deputies shall take the oath of office prescribed by the Constitution; they shall act in the name

of their principal, and may do and perform all of such official acts as may be lawfully done and performed by such clerk in person."

What acts, then, can a Deputy County Clerk perform? He can perform such official acts as may be lawfully performed by the County Clerk in person, and none other. The act of taking the affidavit in question, was not an official act. It was no part of the official duty of the County Clerk. The statute does not require it. There is no law requiring the County Clerk to take such affidavit. Indeed, the indictment in this case alleges that it was not an oath required by law. It not being the official duty of the County Clerk, his deputy was not authorized to perform it, and his act in taking it was absolutely void.

In the case of Carlee v. Smith, 8 Texas, 134, Judge Wheeler said: "The statute authorizes the clerks of the District Court to administer oaths in all cases required in the discharge of the duties of their office, but the administration of the oath in this case was not an act required of the Clerk of the District Court of Harris County in the discharge of the duties of his office. It did not appertain to his official duty, to take the affidavit to the petition." The court therefore adjudged the affidavit to be a nullity. Following this case the Supreme Court, Judge Lindsay delivering the opinion, in the case of Harrison v. Harwood, 31 Texas, 655, said: "The deputy clerk ex virtute officii, may perform all official acts in the name of the principal clerk which the principal clerk himself may perform in discharging the duties of the clerk. But where duties are imposed upon a clerk by statute, not necessarily belonging to his office as clerk, the rule is different."

In the case of Rose v. Newman, 26 Texas, 131, Judge Roberts delivering the opinion says: "The business and object of a deputy is to perform the duties of his principal. Taking proof of instruments for record in his county being one of the duties of the Clerk of the County Court, his deputy had authority to perform it." The converse of this proposition is that if such was not one of the duties of the County Clerk, his deputy could not perform it.

We therefore submit that the court should have excluded the affidavit in question, and that his action in admitting the same was error, for which this case should be reversed and remanded. We further submit that the allegation in the indictment to the effect that the affidavit in question was made before a person authorized to administer the same, was not sustained by the introduction of an affidavit made before O. L. Bishop, Deputy County Clerk, and who was also a minor under the age of 21 years.

The motion in arrest of judgment also calls in question the insufficiency of the indictment, among other things, because it was taken by a Deputy County Clerk.

*Mann Trice*, Assistant Attorney-Genreal, for the State.

HENDERSON, JUDGE.—The appellant was convicted in the court below on a charge of false swearing, and his punishment assessed at two

years in the penitentiary. From the judgment and sentence of the lower court he prosecutes this appeal. The charge under which the indictment for false swearing was predicated in this case was that appellant made a voluntary affidavit in writing before O. L. Bishop, Deputy County Clerk of Johnson County, Texas, that one Miss Ruby Lee Porter was 18 years of age, and that there existed no legal objections to the marriage of said Miss Porter to affiant. The first assignment of error calls in question the ruling of the court in allowing the State to prove that the father and mother of Miss Porter objected to her marriage with appellant. It is contended by appellant that said testimony is wholly immaterial, and that the indictment did not allege the objection of her parents to the marriage. The indictment in this case does charge that there were no legal objections to said marriage, and the father and mother were the only persons who could have objected to said marriage; and, although their daughter might have been under age, they could have legalized the marriage by giving their consent thereto. The affidavit on which the perjury was based also contains the allegation that there were no legal objections to said marriage, and this particular affidavit was also traversed by the indictment; so that it would appear that this was an element of the perjury assigned. But, conceding that said testimony was not material, yet we fail to see how the admission thereof could have injured the appellant. The appellant offered to prove that he presented Miss Porter with a number of presents, some of said presents being useful for housekeeping, and that she still retained all of said property in her possession, with the knowledge and consent of her parents. Appellant claims that this testimony was admissible for the purpose of showing that her parents were consenting to said marriage. The court, in explaining this bill of exceptions, shows that no proof was offered by appellant tending to show that he had given Miss Porter any presents during the month previous to making the affidavit, and that he only offered to prove generally that, pending their engagement, he had given her presents. It does not occur to us that this testimony was material, or that the court erred in excluding the same. The principal ground of contention on the part of appellant why this case should be reversed is because the deputy clerk, O. L. Bishop, before whom said affidavit was made, was not at the time 21 years of age; that he was at said date only 20 years old. The grounds urged by appellant are: First, because it appeared that O. L. Bishop, the party who administered said oath as Deputy County Clerk, was at said time a minor, under 21 years of age, and could not act as Deputy County Clerk, and that the affidavit was therefore void; second, because, said affidavit not being one required to be taken by the County Clerk in the discharge of his official duty, the deputy could not take the same for the County Clerk. Our statute defining perjury and false swearing requires that the oath shall be taken before an officer authorized to administer oaths, and if a minor, under the laws of this State, can be appointed a Deputy County Clerk, then it follows that he is such an officer as can administer an oath. Our

statutes with reference to County Clerks, and the appointment of deputies, so far as they bear upon this question, are as follows: Article 1142, Sayles' Civ. Stat., provides that there shall be a County Clerk for each county, who shall be elected at a general election for members of the legislature by the qualified voters of such county, who shall hold his office for two years, and until his successor shall have duly qualified. Article 1144, Id., indicates the form of bond and oath required. Article 1145, Id., authorizes the Clerk of the County Court to appoint one or more deputies, by written appointment under his hand and seal of court, which appointment shall be recorded in the office of such Clerk of the County Court, and shall be deposited in the office of the Clerk of the District Court. Article 1146, Id., is as follows: "Such deputies shall take the oath of office prescribed by the Constitution. They shall act in the name of their principal, and may do and perform all such official acts as may be lawfully done and performed by such clerk in person." Article 1149, Id., says that such clerk shall be authorized to issue all marriage licenses, to administer all oaths and affirmations, and to take affidavits and depositions to be used as provided by law in any of the courts. There is no statute defining the qualifications of deputy clerks, or what character of persons may be appointed to said office. Article 2471, Sayles' Civ. Stat., defines who are minors, making all male persons under 21 years of age minors. Article 3361a et seq., Sayles' Civil Stat., regulates the removal of the disabilities of minors, and authorizes the District Courts, on petitions setting up sufficient grounds, to remove the disabilities of minors over the age of 19 years; and provides, that after such adjudication the minor shall be deemed of full age for all legal purposes, except that he shall not have the right to vote. We have examined the decisions of our own courts, but we can find but one bearing upon the subject now under consideration. Steusoff v. State, 80 Texas, 429. Looking into the decisions of the courts of other States as to this and kindred subjects, we find the rule stated to be this: If the office is ministerial, such as calls for the exercise of skill and diligence only, minors may legally hold the same, and execute the duties thereof; but if the office is a judicial one, or one which concerns the administration of justice, on account of their inexperience, and want of judgment and learning, they cannot be appointed to same. In Golding's Case, 57 N. H., 146, S. C. 24 Amer. Rep., 66, which is relied on by counsel for appellant, the rule is stated as above. In that case, however, it was held that a minor could not hold the office of Justice of the Peace, the same being a judicial office. In the case of United States v. Bixby, 9 Fed., 78, the indictment charged that the defendant committed perjury in swearing to the truth of a quarterly report as assignee in bankruptcy, before Auretus W. Hatch, a notary public. The defendant set up that the said Hatch was a minor under 21 years of age, and could not hold the office of notary public, and so the oath taken before him was not before an officer authorized to administer oaths. The court held in that case that there

was nothing in the statutes of Indiana inhibiting minors from holding the office of notary public; that, the notarial office being ministerial, and not judicial, the rule at common law would govern. The court further says: "Unlike most of the States, Indiana has not declared, in her constitution or statutes, that only those who have attained the age of 21 years shall be eligible to any public or civil office. While at common law persons are not admitted to the full enjoyment of political and civil rights until they have attained the age of 21 years, yet infants are capable of executing mere powers and, as agents, of making binding contracts with others. In England they are allowed to hold the offices of park-keepers, foresters, jailer, and mayor of a town; and in both England and this country they are capable of holding and discharging the duties of such mere ministerial offices as call for the exercise of skill and diligence only. They are not eligible to the offices which concern the administration of justice, on account of their inexperience and want of judgment and learning." Referring to Rex v. Dilliston, 3 Mod. 222; Tyler, Inf. § 78. In Wilson v. Newton, 87 Mich., 493; S. C., 2 Amer. Rep., 173,; the question was whether a woman could be appointed to the office of Deputy County Clerk. The statutes of that State in regard to the qualifications of clerks and deputies are very similar to our own statutes on the subject. The court holds in that case that the office of County Clerk is wholly ministerial, and when the law provides that a ministerial officer may appoint a deputy, for whose acts he and his sureties are responsible, and does not limit or restrict him as to whom he appoints, he has authority to appoint whomsoever he pleases. The person appointed acts for him; or, in other words, he acts through his deputy. His choice is not confined to any race, sex, age, or color. In the case of Jeffries v. Harrington,.11 Colo., 191, cited in the above case, the Supreme Court of the State of Colorado held that, under a provision of the constitution of said State, which provided that "no person except a qualified elector shall be elected or appointed to any civil or military office in this State," the word "office," as used therein, did not include deputy clerkships of County Courts, and women may hold such deputy clerkships. These authorities seem to stand upon correct legal principle. Our own Supreme Court, in the case of Steusoff v. State, already cited, held that a citizen of the State moving from Harris to Liberty County, within so short a time before the election as not to be a qualified voter at such election in the latter county, still was eligible to election, and could hold the office of tax assessor in Liberty County. In discussing the question the court quotes with approval from Barker v. People, 3 Cow., 703, as follows: "Eligibility to office is not declared as a right or principle by any express terms of the constitution [of New York], but it rests as a just deduction from the express powers and provisions of the system. The basis of the principle is the absolute liberty of the electors and the appointing authorities to choose and appoint any person who is not made ineligible by the constitution. Eligibility to office, therefore, belongs not exclusively or specially to

electors enjoying the right of suffrage. It belongs equally to all persons whomsoever not excluded by the constitution." Our Supreme Court then proceeds to dispose of the question in the following language: "When a constitution has been framed which contains no provision defining in terms who shall be eligible to office, there is strength in the argument that the intention was to confide the selection to the untrammeled will of the electors. Experience teaches us that in popular elections those only are elected who are in sympathy with the people, both in thought and aspirations; and that no law is needed to secure the election of those only who reside in the county or district in which their functions are to be performed. The constitution of 1869 contained the provision 'that no person shall be eligible to any office, State, county, or municipal, who is not a registered voter in the State:' Article 3, § 14. The omission of a similar article in our present constitution is not without significance."

It is to be observed, as before stated, that neither our Constitution nor laws on the subject, prescribe any qualification such as would render a minor ineligible or disqualified from holding the office of Deputy County Clerk. As to the clerk himself, there might be some question, as he is required to execute a bond, which might involve the capacity to so contract, but there is no such requirement as to Deputy County Clerks. The authorities cited establish the doctrine, that if the duties of Deputy County Clerk, under the provisions of our statute, are ministerial, a minor can receive the appointment, and execute the duties required of said deputy. The duties of County Clerks in our State are regulated by statute, and they appear to be purely ministerial; and, in addition to their other functions, as has been seen, they have the general power to administer all oaths and affirmations, and to take affidavits and depositions to be used, as provided by law, in any of the courts. Sayles' Civ. Stat., Art. 1149. Deputies are authorized to act in the name of their principal, and to do and perform all such official acts as may be legally done and performed by such clerk in person. By virtue of his office, the County Clerk is empowered to administer oaths and affidavits generally. This power appertains to his office, and belongs to his official duties, and his deputy, in this regard, has such power and authority as he can exercise; and, in our opinion, the appointment of O. L. Bishop, by the Clerk of the County Court of Johnson County, as his deputy, was a legal and valid appointment. Appellant, however, contends that the act of said deputy in granting the license in this case, was a judicial act, inasmuch as said deputy, if authorized to issue a license for his principal, was thereby authorized to inquire as to the status of the parties desiring to procure a marriage license; that is, whether they were eligible and authorized by law to intermarry. We do not think that his functions in this regard were any more judicial than the registration and recording of a deed, for in such case he would have to pass upon the legality of the acknowledgment, to ascertain and determine whether or not the acknowledgment was such as authorized a registration of the deed. The

act itself is only one requiring the exercise of such skill and diligence as appertains to a ministerial office, and we think it clearly comes within the definition given in Rains v. Simpson, 50 Texas, 501, cited by counsel. In our opinion, O. L. Bishop, the officer before whom appellant made the affidavit in question, was authorized to administer the same as the Deputy County Clerk of Johnson County. Said affidavit was regular in form, and was voluntarily made by the appellant, and the evidence abundantly shows that the same was false, and that he knew it was false when he made it. There being no error in the record, the judgment and sentence of the lower court is affirmed.

*Affirmed.*

DAVIDSON, JUDGE, (dissenting).—If a minor can hold the position of deputy to the County Clerk (and I am inclined to the opinion that he can), then he can perform all acts and discharge all duties pertaining to the office of County Clerk. Rev. Stat., Art. 1146. This authority is conferred by statute upon all deputies of such clerk, without distinction as to age or other qualification, and is coextensive with the authority of the principal as such clerk. If perchance this authority is other than purely ministerial, it is no matter that the deputy is a minor. He can discharge it in the same manner and to the same extent as can his principal. The statute confers no authority upon the principal that is withheld from his deputy. If the deputy cannot exercise authority other than ministerial, it is not by reason of his minority, but because of a want of authority in his principal. The question as to the extent of legislative power conferring authority upon County Clerks not purely ministerial, is not involved in this case. The judgment is affirmed.

*Affirmed.*