McCUISTION et al. v. FENET et al.[†]

(Court of Civil Appeals of Texas. Texarkana. Feb. 19, 1912. Rehearing Denied Feb. 29, 1912.)

1. EVIDENCE (§ 31*)—JUDICIAL NOTICE—PROVISIONS OF CITY CHARTER.

Under Sp. Laws 1905, c. 6, incorporating the city of Paris, and making it the duty of courts to take judicial notice of its provisions as though it were a public statute, in passing upon the sufficiency of pleadings in mandamus to compel action of the mayor and city council elected thereunder, relevant provisions of the charter must be considered, whether specifically set out or not.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 40–41; Dec. Dig. § 31.*]

2. STATUTES (§ 228*)—CONSTRUCTION—PROVISO.

A proviso in a statute will be restricted to the immediately preceding parts of the clause to which it is attached, unless its terms or the subject-matter requires a broader construction.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 310; Dec. Dig. § 228.*]

3. MUNICIPAL CORPORATIONS (§ 126*)—OFFICERS—CONSTRUCTION OF STATUTE—MEANING OF LANGUAGE—"ANY"—"EITHER."

Section 11 of the Paris city charter (Sp. Laws 1905, c. 6) is as follows: "Provided, that the offices of assessor and collector and city secretary, as heretofore combined by the city council under the name of city secretary, may so continue at the option of the council. * * * Provided, further, that the city council may combine or abolish any of the offices above named." *Held*, the word "any" refers to an indefinite number of objects, and, as "either" is singular, and has reference to only one group, "any" to give it its usual and ordinary meaning, must be construed to mean "all," rather than "either," and the proviso cannot therefore refer to section 11, as only two offices constitute the entire group therein, and the section itself combines such offices, leaving action by the council unnecessary, and the proviso cannot refer to a section dealing with the council itself, and, section 10 dealing only with offices and agencies which the council may create, it will be held to refer to section 9, enumerating all offices constituting the city government, except the city council; that section being the first appropriate section in proximity to the proviso.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 298–300; Dec. Dig. § 126.*

For other definitions, see Words and Phrases, vol. 1, pp. 412–433; vol. 8, pp. 7575–7577; vol. 3, pp. 2324–2325.]

4. STATUTES (§ 189*)—CONSTRUCTION—MEANING OF LANGUAGE.

The verbiage of a legislative act must be construed as written, unless it is apparent that a literal construction would defeat the legislative intent.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 268; Dec. Dig. § 189.*]

5. STATUTES (§ 228*)—CONSTRUCTION—PROVISOS.

Provisos in a statute will not be construed to refer to that which immediately precedes them, if such a construction would involve a perversion of the grammatical construction, or the importation of terms other than those used, unless it is elsewhere shown that the literal construction of the language used would be inconsistent with the legislative intent.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 310; Dec. Dig. § 228.*]

6. CONSTITUTIONAL LAW (§ 70*)—CONSTRUCTION—CONSEQUENCES FROM INTERPRETATION.

In construing the proviso in section 11, Paris City Charter (Sp. Laws 1905, c. 6), which empowers the city council to combine or abolish the "above" offices, to refer to section 9, which enumerates certain city offices, the court is guided only by the expressed legislative intent, and may not consider that the council are thereby granted power to seriously impair the efficiency of the government by absurd and unwise combinations or the abolition of important offices.

[Ed. Note.—For other cases, see Constitutional Law, Cent.Dig. §§ 129–132, 137; Dec.Dig. § 70.*]

7. CONSTITUTIONAL LAW (§ 70*)—PROVINCE OF COURTS—INTERPRETATION OF LEGISLATIVE ACTS.

The province of the courts is to determine the intent of the Legislature from the provisions of a statute, not to supervise legislation, or keep it within the bounds of propriety and common sense.

[Ed. Note.—For other cases, see Constitutional Law, Cent.Dig. §§ 129–132, 137; Dec.Dig. § 70.*]

8. STATUTES (§ 219*)—SPECIAL CITY CHARTER—CONSTRUCTION BY CITY OFFICIALS.

While the contemporaneous construction of the Paris city charter (Sp. Laws 1905, c. 6) by the city council was to the effect that it permitted the abolishment of certain city offices, as evidenced by the actual abolishment of such offices, and the people concurred therein by acquiescence, such a construction is not binding upon the courts, but is entitled to much persuasive force in the determination of a doubtful and ambiguous provision.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. § 219.*]

Appeal from District Court, Lamar County; Ben H. Denton, Judge.

Mandamus by F. R. Fenet and others against Ed. H. McCuistion and others. From a judgment awarding the writ, defendants appeal. Reversed, and application dismissed.

Wright & Patrick, for appellants. H. D. McDonald and Burdett & Connor, for appellees.

HODGES, J. This is an action by F. R. Fenet and four others, who sue as resident citizens, voters, and property taxpayers of the city of Paris in Lamar county, Tex., against Ed H. McCuistion, as mayor, and the other appellants, as aldermen and members of the city council of the city of Paris, in which the plaintiffs seek a writ of mandamus, compelling the mayor and aldermen, in their official capacity, to order an election for the purpose of filling vacancies in the offices of city attorney and city marshal of that city. Omitting formal parts, the petition, in substance, alleges the incorporation of

the city of Paris under a special act of the Twenty-Ninth Legislature, and shows, by reference to different sections of the charter, that the municipal government was made to consist of the city council, to be composed of the mayor and five aldermen; that the other officers provided for were recorder, city marshal, city attorney, city secretary, assessor and collector, city treasurer, and such other officers and employés as the council might determine; that the city recorder, city marshal, city treasurer, city attorney, city secretary, and city assessor and collector were all to be elected by a vote of the people, and should hold their offices for the term of two years and until their successors should be elected and qualified; that the annual city elections were to be held on the first Tuesday in April in each year, and that in case of a vacancy in the office of alderman, or any other elective office, by refusal to accept or failure to qualify, or by death, resignation, or otherwise, the city council was required to order another election to fill such vacancy. The petition further shows that on the 17th day of December, 1906, the appellants, defendants below, composing the city council, passed an ordinance (No. 211) abolishing the office of city marshal, and followed it with another (No. 212) creating the office of chief of police, and at the same time passed an ordinance (No. 213) abolishing the office of city attorney, and followed this with another (No. 214) creating the office of general attorney. It is further alleged that, pursuant to the above ordinances, the mayor appointed certain persons to the respective offices so created, has annually renewed those appointments, and still continues to do so; and that, notwithstanding the vacancies thereby created in those offices, which have existed since 1907, caused by the acts of the council and by the abandonment of the offices by their former incumbents in failing and refusing to perform the duties thereof, the council has continuously since that time failed and refused to provide for the election of said officers. The petition also claims that the ordinances Nos. 211 and 213, which attempted to abolish the elective offices of city marshal and city attorney, were unauthorized, null and void, under the charter, and hence the offices themselves remain in existence; that the vacancies therein caused made it the plain duty of the city council to order an election to fill them. The petition concludes with a prayer asking for a peremptory writ of mandamus, compelling the mayor and aldermen composing the city council to order an election to fill the vacancies referred to.

The appellants replied by special exceptions, a general demurrer, and a special answer, in which the material facts alleged in the original petition of the appellees were admitted; but some of the legal conclusions therein stated, such as the nullity of the ordinances and the existence of the vacancies referred to, were denied. The court overruled the special exceptions and the general demurrer of the appellants to the petition of the appellees, sustained a general demurrer of the latter to the answer of the appellants, and rendered a judgment granting the writ of mandamus, requiring the appellants to order an election for the purpose of filling the vacancies in the offices of city attorney and city marshal, to be held on the 15th day of June, 1911. From that judgment the appellants prosecute this appeal.

[1] The city of Paris was incorporated, as alleged by the appellees, by a special act of the Twenty-Ninth Legislature. See Special Laws of 1905, p. 31 et seq. The act contains a section making it the duty of the courts to take judicial notice of its provisions as if it were a public statute; therefore, in passing upon the legal sufficiency of the pleadings, they must be considered with reference to all the relevant provisions of the charter, whether these are specifically set out or not. The following are those sections which most directly relate to the questions involved in this appeal:

"Sec. 7. The municipal government of the city of Paris shall consist of the city council, which shall be composed of five aldermen and the mayor.

"Sec. 8. The other officers of said city shall be a recorder, city marshal, city attorney, city secretary, an assessor and collector, city treasurer, and such other officers and employés as city council may determine.

"Sec. 9. The recorder, city marshal, city attorney, city secretary, city assessor and collector, shall be elected by vote of the people, and shall hold their offices for a term of two years and until their successors are elected and qualified except as herein provided. The compensation of said officers shall be fixed by the city council.

"Sec. 10. All other officers and employés of the city, except treasurer, which is otherwise herein provided for, shall be appointed by the mayor and confirmed by the council, and shall perform such duties, and receive such compensation as may be decided upon by the council, and shall not be appointed at any one time for a longer term than one year, and such officers and employés may be removed either by the mayor or by the council at any time, upon the payment of salary or salaries to the time of discharge.

"Sec. 11. Provided, that the offices of assessor and collector and city secretary, as heretofore combined by the city council under the name of city secretary, may so continue at the option of the council, and said city secretary shall perform all the duties of said offices, and shall devote his whole time to the same: Provided, further, that the city council may combine or abolish any of the offices above named."

By section 88, it is provided that the annual elections for the city shall be held on the first Tuesday in April of each year. Section 90 provides that if there is a vacancy in the office of alderman, or in any other elective office, by refusal to accept or failure to qualify, or by death, resignation, or otherwise, the city council shall order another election to fill such vacancy, and all such elections shall be conducted as provided for in annual elections.

[2] The only question presented in this appeal involves the construction of the foregoing provisions of the charter as to the powers conferred upon the city council to abolish the offices of city attorney and city marshal. The provision specially relied on by the appellants as justifying the exercise of the authority assumed by the city council in abolishing the offices of city attorney and city marshal is the concluding sentence in section 11, which reads as follows, "provided, further, that the city council may combine or abolish any of the offices above named." It is contended by the appellants that the phrase "any of the offices above named" refers to those mentioned in section 9, and empowers the city council to combine any of those there enumerated, or to abolish any of them. Counsel for appellees insist that this last proviso applies only to the two offices of assessor and collector and city secretary, mentioned in the first portion of section 11. It will be noticed that assessor and collector are treated in section 9 as constituting but one office. The rule for construing a proviso is thus stated by Judge Gould, in Roberts v. Yarboro, 41 Tex. 449: "When the enacting clause is general in its language and objects, and a proviso is afterward introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fully within its terms." The above is also an extract from an opinion delivered by Justice Storey of the United States Supreme Court, in United States v. Dickson, 15 Pet. 165, 10 L. Ed. 689, and is in harmony with the rule now generally recognized and laid down by the text-book writers. 2 Sutherland on Stat. Const. § 352. In the section last referred to, the author uses this language regarding the office of a proviso and its application: "The natural and appropriate office of the proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. It is to be construed in connection with the section of which it forms a part, and it is substantially an exception. If it be a proviso to a particular section, it does not apply to others, unless plainly intended. It should be construed with reference to the immediately preceding parts of the clause to which it is attached. In other words, the proviso will be so restricted, in the absence of anything in its terms, or the subject it deals with, evinc-ing an intention to give it a broader effect. It is not an arbitrary rule to be enforced at all events, but is based on the presumption that the meaning of the lawmaker is thereby reached."

[3] Keeping in view the rules announced above, the question is, What offices did the Legislature refer to when it used the language quoted as the concluding portion of section 11? There is no ambiguity apparent upon the face of this sentence. The difficulty is created by the arrangement of the subject-matter which precedes it, and to which it manifestly relates. If the requirements clearly embraced within the meaning of the language used could be satisfied by referring them to the offices mentioned in a preceding portion of the same section, the difficulty would be removed, because these are next in the order of proximity to the proviso. But this cannot be done and give to the terms employed their usual and ordinary meaning. Only two offices, those of assessor and collector and city secretary, are mentioned in section 11. The word "any" refers to an indefinite number of objects. As here used, it evidently refers to a group of more than two offices. If the Legislature intended to authorize the city council to combine only two offices, it would not have deliberately used the word "any" in that connection. Appellees insist that the term was used inadvertently, and suggest that the word "either," being more appropriate for expressing the legislative intent, should be substituted. If this should be done, the sentence would then read, "provided, further, that the city council may combine or abolish *either* of the offices above named." "Either" is singular in form and meaning, and has reference to only one of a group of objects. The sentence as thus altered would therefore be grammatically incorrect, unless the words "combine or" are eliminated, leaving as the predicate only the language expressive of the authority to abolish the offices referred to, or the sentence be radically reconstructed. There would be no grammatical impropriety in saying, "the city council may abolish *either* of the offices above named," but the error would be obvious if it were said, "the city council may combine *either* of the offices above named," when two only constitute the entire group to be considered. When the offices which may be combined and those which may be abolished are indicated by the same pronominal adjective, "any," their multiplicity and the group to which they belong must be regarded as being the same. Giving to the language of this proviso its ordinary and commonly accepted meaning, it not only empowers the city council to combine any of the offices referred to, but also empowers it to abolish any one or all of them. The power to combine or abolish *any* implies the power to combine all of them, or to abolish all of them. The word "any," when used in that sense, means "all." 2 A. & E. Ency. Law, p.

414; 2 Cyc. 472, and cases cited in the notes.

[4] The authority sometimes assumed by the courts to alter the verbiage of an act of the Legislature, or to substitute different words for those used, is justified only when resorted to for the purpose of ascertaining and giving expression to the precise meaning intended to be conveyed by the Legislature. The verbiage must be construed as written in the act, unless from other provisions it is made apparent that the ambiguity is caused by the inadvertent use of terms which, when literally construed, would operate to defeat the legislative intent. Cannon v. Vaughan, 12 Tex. 399; Russell v. Farquahar, 55 Tex. 355; 2 Sutherland, Stat. Const. (2d Ed.) p. 705.

A second reason for saying that the language of the last proviso does not apply to the two offices mentioned in the same section is because to do so would seem to be repeating a great part of what was already accomplished in the preceding portion of the section. It would be useless to authorize the city council to combine the two offices of assessor and collector and city secretary when that had just been done by the charter itself. If these offices alone were referred to in the second proviso, the legislative purpose could have been made manifest without any ambiguity by simply saying that the city council should have power to abolish the one whose functions had been taken away.

Section 11 is composed exclusively of provisos which were manifestly intended to limit preceding portions of the charter. The first is complete within itself, and presents no ambiguity. The second is evidently intended to add something to that which has just preceded; for it begins, "provided, further," thereby signifying a purpose to ingraft still another qualification, or limitation, on something which has previously been said.

[5] If the second proviso cannot be applied to the offices mentioned in the same section, without an alteration in the language used, in order to preserve the proper grammatical structure of the sentence, it follows that it must be referred to the relevant subject-matter next in order of proximity. Section 10 which intervenes between sections 9 and 11, mentions only such offices and agencies as the council may at its pleasure create. The uselessness of authorizing the city council to combine or abolish those offices is, it seems, a sufficient reason for saying that section 10 was not the one referred to in the closing sentence of section 11. Section 9 enumerates a group of all the offices constituting the city government, except those of mayor, alderman, and city treasurer. Those so named, being next in order of proximity to the proviso, may, we think, be considered the group to which the reference was made. Conceding that provisos of this character should ordinarily be referred to that which immediately precedes them, that rule will not be enforced when to do so would in-volve a perversion of the grammatical construction of the language used, or in the importation of other terms than those employed, unless elsewhere in the act the real purpose of the Legislature shows that the language of the proviso was inadvertently used, and that its literal construction would be inconsistent with the main purpose of the statute. All rules of construction are for the purpose of ascertaining the legislative intent, and the substitution of one word for another, or the transposition of terms, is resorted to merely as a means to that end.

We have not been referred to any other provision of the charter which conflicts with the construction which we have placed upon the language of section 11. The only reason for adopting a different construction, outside of the mechanical arrangement of those provisions of the act and the character of the language employed, is the magnitude of the power it would confer upon the city council, and the absurd and incongruous combinations such power would make possible. It is claimed that this construction would attribute to the Legislature an intent to empower the city council to abolish itself, or to blend the functions of offices which the established policy of this country has separated. The first objection is sufficiently answered by saying that the unreasonableness of such a course of conduct, as that of the city council abolishing its own existence, would alone exclude the idea that such authority was contemplated in the passage of the law. Still another answer, equally as satisfactory, if not more so, is that, according to the construction adopted, the offices of mayor and the members of the city council are not included within the group to which we think the proviso refers, and therefore are not among those which may be combined or abolished.

[6] Passing to the other objection, it must be admitted that, should the city council elect to do so, it could make some absurd and unwise combinations by uniting the different functions of some of the offices named, and might thereby produce an anomalous, if not a disastrous, state of affairs. It might, also, by abolishing important offices without at the same time providing for the transference of the duties to some other functionary, seriously impair the efficiency of the government by destroying important municipal agencies. This is, indeed, the grant of extensive authority, and is reposing much in the wisdom and discretion of the city council; but the plenitude of the power is not such as to require a court to indulge the presumption that the Legislature did not intend to confer it. Article 387 of the Revised Civil Statutes, which appears under the title relating to the incorporation of cities and towns, contains a provision which makes it possible for any city or town incorporated under the general law to make some combinations equally as incongruous as those apprehended in this instance, and confers power to abolish offices

equally as important. The first portion of the article referred to constitutes the mayor and city council the municipal government. After some other provisions, not material here to be considered, the following language is used: "The other officers of the corporation shall be a treasurer, assessor and collector, secretary, city attorney, marshal, and city engineer, and such other officers and agents as the city council may from time to time direct; provided, that the office of treasurer, assessor and collector, city attorney, city engineer, may be dispensed with by an ordinance of the city or town council, and the powers and duties herein prescribed for such officers may be transferred by said council upon other officers." This provision, together with some others, seems to have been copied in the former charter of the city of Paris, and appears therein as section 4. While the power granted to city councils under the general law is not so extensive as that here under consideration, and contains some important directions as to what shall be done when an office is dispensed with, yet we cannot say that it fixed the limits beyond which the Legislature would not go in conferring similar authority upon city councils in cities incorporated by a special act. The city council is the municipal legislature, and in many ways is usually endowed with power which, if unwisely or corruptly exercised, would wreck the municipality and practically destroy its existence. In the very nature of things, some discretion must be lodged somewhere, in some delegates upon whose wisdom and integrity the people must rely for the proper conduct of their local governmental affairs. The mere fact that the language used carries with it a grant of extensive power to the city council is alone no sufficient reason for disregarding the plain meaning of the act.

[7] If the authority was such as the Legislature might confer, the propriety of doing so is a matter with which the courts have no concern. Sanders State Bank v. Hawkins et al., 142 S. W. 84. In his work on Statutory Construction, in the citation before referred to, Mr. Sutherland uses the following language, which, we think, is applicable to the question here under consideration: "One who contends that a section of an act must not be read literally must be able to show one of two things: Either that there is some other section which cuts down or expands its meaning, or else that the section itself is repugnant to the general purview. The question for the courts is, What did the Legislature really intend to direct? and this intention must be sought in the whole of the act, taken together, and other acts in pari materia. If the language be plain, unambiguous, and uncontrollable by other parts of the act, or other acts or laws upon the same subject, the courts cannot give it a different meaning to subserve public policy or to maintain its constitutionality. The limited meaning of words will be disregarded, when it is obvious from the act itself that the use of the word was a clerical error, and that the Legislature intended it in a different sense from its common meaning. Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity, of the result is out of place. It is not the province of the courts to supervise legislation and keep it within the bounds of propriety and common sense."

[8] But there is still another consideration which we think is entitled to some weight in the determination of these questions; that is, the construction which seems to have been placed upon this section of the charter by the acting authorities of the city of Paris, and the acquiescence of its citizenship. The averments of the petition, and the facts proven upon the trial, show that ordinances were passed December 20, 1906, abolishing the offices of city attorney and city marshal; that continuously since that time there have been no incumbents of those offices elected by the people; and that the duties prescribed in the charter for city attorney and city marshal have been performed by appointees under the names of "general attorney" and "chief of police." The petition states that no elections have been ordered for the offices of city attorney and city marshal; but this is no reason why such officers could not have been elected at any biennial recurrence of the date fixed by the charter when such elections were to take place. The charter provides that elections shall be held on the first Tuesday in April every two years. It is not essential to the exercise by the voters of their right to elect a city attorney or a city marshal that the city council should order an election. The time of the election having been fixed by law, when it arrives, any eligible citizen may offer himself as a candidate for any of the offices named; and it is the privilege of the voter to cast his ballot for such as he may choose. The clear inference from the record, and the unchallenged statements in the briefs of counsel for appellants, is that during those years from 1906 up to the institution of this suit there had been an acquiescence on the part of the people in the construction which the council placed upon the provisions contained in section 11, authorizing it to abolish the two offices mentioned. This contemporaneous construction by the city council, in which the people evidently concurred, while not binding on courts is nevertheless entitled to much persuasive force in the determination of a doubtful and ambiguous provision, when such doubt and ambiguity are attributed to the magnitude of the power granted. If the city council had the authority to abolish any of the offices named in section 9, then it had the power to discontinue the offices of city attorney and city marshal.

Our conclusion is that the court erred in awarding the writ of mandamus. Under the facts alleged in the petition of the appellees, construed in the light of the powers conferred by the charter upon the city council, there are no vacancies which it may now be compelled to order an election for the purpose of filling. The facts appear to be undisputed, and the controlling issue is settled by passing upon the sufficiency of the pleadings. There is nothing to indicate that these could be modified to show a different state of facts, if the parties were given an opportunity to amend.

The judgment of the district court will therefore be reversed, and judgment will here be rendered, sustaining the demurrer of the appellants to the original petition of the appellees, and dismissing the application for the writ of mandamus; and all costs, both of this court and the court below, will be awarded against the appellees.