**CHENAULT v GRAY et**
**CHENAULT v BLAIR et**

Ohio Appeals, 2nd Dist, Franklin Co

Nos 2218 & 2219. Decided Jan 6, 1933

F. S. Monnett, Columbus, and B. W. Gearhart, Columbus, for plaintiff in error.

Gilbert Bettman, Attorney General, Columbus, and J. A. Godown, Ass't Attorney General, Columbus, for defendants in error, Superintendents of Banks.

**BY THE COURT**

The question presented is: Does the petition state a cause of action against defendants?

The office of Superintendent of Banks, the duties and obligations of the incumbent are creatures of statute. In conducting the office, the superintendent in many particulars acts as a quasi judicial officer, having wide powers of discretion in determining the course he shall pursue. As to any official act which comes within the classification of a quasi judicial function, his action can not be challenged, unless it be averred that he acted from wilful, corrupt or malicious motives. As to ministerial acts, he does not have such liberal protection of the law, but none of his acts can be questioned unless, and until, it definitely appears either that he has done that which the law will not permit or refused to do that which the law enjoins upon him. It will therefore be necessary to test this petition in the face of the foregoing principles.

Without restating the paragraphs and the subheadings thereunder, it will be noted that paragraph 4 (a) is a charge of neglect and failure to examine the bank annually, semi-annually, or at any other time. We find one section of the code to which this allegation is referable, namely, §710-19, GC which provides in part:

"At least twice each year and as often as the superintendent of banks may deem necessary, the superintendent of banks or an examiner appointed for that purpose shall thoroughly examine the cash, bills, collaterals, securities, books of accounts and affairs of each bank. * * * He shall also ascertain if such bank is conducting its business in the manner prescribed by law. * * *"

The charge of failure to examine a bank may properly come under that portion of the section quoted. The obligation enjoined upon the superintendent in this section is mandatory and a ministerial duty. State ex Funk v Turner et (Mo.), 42 SW 594. No discretionary power is vested in him respecting the general scope of the examination or the number of times up to two, that it shall be conducted during each year. The obligation to "ascertain if such bank is conducted according to law" is also enjoined upon him. Thereafter, paragraphs 4 (b), (c) and (d) are referable to §710-18, GC, which, so far as pertinent, provides:

"At the end of each fiscal year, the superintendent of banks shall make an annual report to the governor, which report shall exhibit:

"(a) A summary of the state and condition of every bank from which reports have been received during the year, with an abstract of the whole amount of capital returned by them, the whole amount of their debts and liabilities, the total amount of means and resources, separating the reports of the various kinds of banks, and specifying the amount of lawful money held by them at the time of their several returns, a list of the officers and directors of each bank and such other information in relation to such banks, as in his judgment may be required."

It would seem that the allegations of the petition, Paragraph 4 (b), (c) and (d) were intended to charge the superintendent with a failure to observe that portion of §710-18 GC just quoted. But the averments, if true, are insufficient to establish a violation of this section because the report which the section requires from the superintendent is merely a summary made up from re-

ports sent to him by the respective banks of the state under his supervision. There is no averment that reports were not made by him in accord with the facts as disclosed in the reports made to him. All that is charged might occur though the superintendent strictly complied with the provisions of the law. This would be true, if the Ohio State Bank of Washington C. H. had sent an untrue, inaccurate and improper report to the superintendent respecting the information required to appear in the annual report of the superintendent to the governor and the superintendent in good faith had reported the statements as therein made. Paragraph 4 then contains no allegation of the failure of the superintendent to do anything which the statutory law enjoined upon him, except to fail to examine the bank. But let us examine this exception, in conjunction with paragraph 5 (b) wherein it is said:

"Elbert H. Blair as such officer **knew** by inspection of said Bank of said insolvency of said Bank during his whole term of said office."

It is obvious that the gist of plaintiff's action is the wilful failure of the superintendent of banks to disclose the insolvency of the Ohio State Bank after knowledge. If he knew this, as is alleged, then failure to examine would not have resulted in any greater damage to plaintiff. Paragraph 5 (a) charges neglect in failing to report to the depositors the insolvency of the bank. No such duty is enjoined upon the superintendent and Paragraph 6 (a) and (b) charge him with failure to report the true condition of the bank and purposely refusing to report and publish the true state of affairs. All aver failure to do that which, under the law, he was not required to do. Paragraph 5 (b) also avers that he concealed the insolvency of the bank but does not allege that it was done wilfully, maliciously or corruptly.

Paragraph 7 (a), (b), (c) and (d) relate to a failure to discover worthless collateral, securities, false entries and doubtful claims. But these are but elements contributing to the insolvency of the bank, which, it is formally averred, was known at all times to the superintendent of banks. The averments are in general terms and are but legal conclusions.

Paragraph 8 (a) averring that the superintendent purposely failed to summon and examine all of his agents, etc., to disclose the insolvency of the bank, no doubt

relates to a failure to exercise the power of the superintendent under §710-25 **GC**, to summon such officers and agents to give testimony touching any matter under examination. This paragraph, like many others lends no support to the general statement theretofore made, that the superintendent of banks had knowledge at all times of the insolvency of the Ohio State Bank.

Paragraph 9 (a) charging a failure to report the finding of inspectors furnished him by the State of Ohio seems to be based upon information secured by examination of the banks which theretofore in the petition it is averred was never made.

Paragraph 9 (b) charging a refusal to compel officers and agents to disclose insolvency would have been a useless procedure when that which it would have disclosed was already known to the superintendent according to the allegations of the petition. Then, too, it is evident that if the procedure here and in Paragraph 8 (a) suggested, had been followed the result would have been purely conjectural.

Paragraph 9 (c) charges refusal of the superintendent to take over the bank; to take possession of said doubtful assets and liquidate same in 1927, at the beginning of his term of office, or at any other time during his term of office. Then is followed the charge: which wilful neglect caused the loss of the depositors of their deposits and decoyed plaintiff and all other depositors similarly situated to make new deposits, etc. We deem it unnecessary to analyze this petition further as the succeeding paragraphs, except as we hereinafter distinguish, do not aid the pleader.

The direct and express charge in paragraph 5 (b) "that said Elbert H. Blair as such officer knew by inspection of said bank of said insolvency of said bank during his whole term of said office" in conjunction with paragraph 9 (c): "Refused to take over said bank and take possession of said doubtful assets and liquidate same in 1927 at the beginning of his term of office or at any other time during his term of office, which wilful negligence caused the loss of the depositors of their deposits," in our judgment, states a cause of action.

The statute, §710-89 **GC** provides:

"The superintendent of banks may forthwith take possession of the business and property of any bank to which this act is applicable, whenever it shall appear that such bank:

"1. * * *

"2. Is conducting its business in an unauthorized or unsafe manner;

"3. Is in an unsound or unsafe condition to transact its business;

"4. * * *

"5. * * *

"6. Has become otherwise insolvent."

It is the claim of counsel for defendant in error that, as the statute says the superintendent "may" forthwith take possession of the business and property of the bank" when any of the grounds set forth appear, the determination of the existence of any ground justifying liquidation of the bank as well as the determination thereafter to take the bank over are discretionary functions to be exercised by the superintendent of banks. If this be granted we are of opinion that the petition, though imperfectly, charges a wilful failure to take over the bank after knowledge of its insolvency. We recognize the wide discretionary powers vested in the superintendent of banks to determine whether or not grounds for liquidation exist and we do not say that a certain discretionary power is not vested in him as to the propriety of taking over a bank after determinination of its insolvency. But when the superintendent has determined that a bank is insolvent, or has such knowledge, a failure to take possession of the business and property of the bank for a period of years surely would be an abuse of discretion. There is much reputable authority that it becomes a ministerial duty of the superintendent of banks to take over and liquidate a bank after determination of any of the causes for liquidation set forth in the statute. The plaintiff not only charges against superintendent Blair but also superintendent Gray, that during the whole period of their incumbency as superintendent of banks of the State of Ohio, they knew by inspection of the insolvent condition of the State Bank of Washington C. H., and that with this knowledge they wilfully neglected to close its doors. This is unusual pleading and the facts set forth therein seem incredible. It is said in the case of Fidelity and Casualty Company of New York v Brightman et, 53 Fed. (2d) 161, 5th syllabus:

"Statute providing commissioner 'may' take possession of bank under certain conditions held mandatory, as respects commissioner's liability." See cases there cited.

The opinion in this case was written by Judge Kenyon of the U. S. Circuit Court of Appeals, 8th Circuit, and because of the eminence of the writer is entitled to serious consideration. At page 165 of the opinion the court refers with approval to Deatsch v Fairfield, 27 Ariz., 387; 233 P. 887, 893, which holds that the question of determining whether a bank is insolvent is a discretionary duty, and that when the commissioner charged with supervision of banks has determined a bank to be insolvent, the duty becomes ministerial to close the same at once.

And later, at page 167, quoting from the same opinion:

"The comptroller, in passing upon the question as to whether a bank is solvent or not, exercises judgment and discretion, and it is not until he has determined the bank to be insolvent that he acts ministerially and becomes liable on his bond for dereliction of duty."

Section 11700, Rev. Statutes (Mo. 1919), under consideration in F. & C. Co. v Brightman, supra, as does §73, C124, Sess. Laws of Idaho under consideration in State v Title Guaranty & Surety Co., infra, read much as our §710-89 GC. This is the language of the Missouri statute:

"The bank commissioner may forthwith take possession of the business and property of any corporation or private banker, subject to the provisions of this chapter; * * *"

The causes upon which the commissioner may act are substantially the same as in our statute.

In the instant case, under the allegations of the petition, the action which it is averred the superintendent failed to take came after his knowledge of the insolvency of the State Bank of Washington C. H. What then was the nature of his obligation respecting his duty to close the bank? Many of the cases to which our attention is drawn have to do with the discretionary powers vested in the superintendent of banks up to the time when determination is made of the solvency or insolvency of the bank under investigation, notably State ex Roberts, Superintendent v Farmers' State Bank (Tenn.), 39 SW 2, 281; Sanders State Bank v Hawkins et, (Texas), 142 SW, 84.

State, etc., v Title Guaranty & Surety Co. of Scranton, Pa., et (Idaho) 152 Pac., 189, 4th Syl.:

"The law invests a bank commissioner with discretion while he is making his investigation and up to the point where he reaches the conclusion and becomes satisfied that the bank has unlawfully refused to pay its depositors and has become insolvent, but at this point his discretion ends, and it becomes his mandatory duty to close it, a duty the failure to perform which renders him and the surety upon his official bond liable to depositors who lose their money as a direct result thereof."

And the 8th proposition of the syllabus:

"Where a statute imposes a duty upon one for the protection and benefit of others, and does not invest him with discretionary power in the matter, if he neglects to perform the duty, he is liable to those for whose protection the statute is enacted for any damage resulting proximately from his neglect, whether he be actuated by malice, a corrupt motive, or otherwise."

Nor do we believe that the charge that the defendant in error knew of the insolvency of the bank by inspection is a mere legal conclusion. Chicago, etc., Railway v Kenney, 159 (Ind.), 62 NE 26.

The choice of the expression "wilful neglect" in the petition is not nice but it does fairly import a purposeful act with knowledge. It is equivalent to "designedly," "intentionally," or "perversely;" Lynch v Commonwealth (Va.) 109 SE, 429.

This petition has not been tested upon motion to strike or to make definite and certain; therefore the rule which we are enjoined to observe is that the language of the petition be taken in its most favorable aspect to the pleader. This being true, we summarize our conclusions as follows: many of the allegations, as heretofore indicated, are redundant and irrelevant and do not state a cause of action. There is left, however, a statement of a cause of action upon either theory of the character of the duties of the superintendent of banks. If the determination to take over a bank after known insolvency is a discretionary matter and before the superintendent can be held it must appear that he acted wilfully, corruptly or maliciously, then this obligation to so charge is met in the pleading. If, on the other hand, the closing of the bank after determination of insolvency is a ministerial act, then it is only necessary to allege that the superintendent neglected to perform this ministerial duty. This requirement is met by the pleading. It might also be said that though there is no expressed purpose in the petition to connect the allegations with the 2nd and 3rd causes set forth in §710-89, GC, inferences could be properly drawn therefrom that both of these reasons existed for closing the Ohio State Bank.

The judgment of the trial court will be reversed with instructions to overrule the demurrers to the petition.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.